[No. 73522-1.   En Banc.]
Argued November 18, 2003.     Decided August 5, 2004.

THE STATE OF WASHINGTON, *Petitioner*, v. TIFFANY JUEL HERITAGE, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney*, and *Andrew J. Metts III, Deputy*, for petitioner.

*Cece L. Glenn*, for respondent.

JOHNSON, J. — This case involves whether city park security officers who questioned Tiffany Juel Heritage about her activities in a city park in Spokane were required to give *Miranda*[1] warnings. Finding against Heritage on a charge of possession of drug paraphernalia, the juvenile court reasoned that *Miranda* warnings were unnecessary because the city park officers were not agents of the State and Heritage was not in custody. The Court of Appeals reversed the trial court. We reverse the Court of Appeals.

## FACTS

On June 18, 2001, two bicycle security officers were on duty in Riverfront Park, a city park in downtown Spokane. Both officers wore shorts and white t-shirts with an emblem of a badge emblazoned with the words "Security Officer." They also carried a "duty bag" containing a radio, pepper spray, handcuffs, and a collapsible baton.

The park manages its security officers, who are city employees but not commissioned police officers. Park security officers perform a variety of functions, which include patrolling for unlawful activities.

While on random patrol, the security officers noticed four juveniles sitting in a public area known among officers as a "hot spot" for illegal activities. The security officers observed one of the persons smoking what appeared to be a marijuana pipe. As the officers approached the group, both officers detected the odor of marijuana, which they are

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

trained to detect. The security officers observed an "Altoids" box on the ground near the person holding the pipe.

The officers told the group that they needed to ask some questions and then they would get them on their way. The officers asked one of the juveniles whether the marijuana pipe belonged to him. When the juvenile denied ownership, the officers addressed the entire group. The officers stated, "Whose marijuana pipe is it?" and "We're Park Security, let's move it along." Clerk's Papers (CP) at 30. Heritage responded, "It's my pipe." CP at 30.

The officers also asked the juveniles for identification, took individual pictures of the juveniles, and filled out a trespass form for each.[2] One officer called Spokane police on his cell phone. The security officers continued verbal communication to prevent the juveniles from leaving before the police arrived. Spokane police officers arrived and arrested Heritage.

Heritage moved to suppress her admission to ownership of the pipe, arguing that the officers should have given *Miranda* warnings. The trial court denied the motion, concluding that the juveniles were not in custody, and the security officers were not agents of the State but rather had the status of private citizens. The trial court, on stipulated facts, found against Heritage on the charge of possession of drug paraphernalia.

Division Three of the Court of Appeals reversed in a published opinion. *State v. Heritage*, 114 Wn. App. 591, 61 P.3d 1190 (2002). The State petitioned for review, which we granted to resolve an apparent conflict of authority with Division One of the Court of Appeals. *See State v. Wolfer*, 39 Wn. App. 287, 693 P.2d 154 (1984), *review denied*, 103 Wn.2d 1028 (1985). The issue before us is whether, under the facts of this case, Heritage was entitled to *Miranda*

---

[2] A "trespass form" is a sheet of paper kept on file with park security to keep track of people who have been excluded from the park. The form includes a person's name, address, phone number, and photograph, and it is signed by the individual excluded from the park. If a person returns to the park after having been given such a notice, he or she would be subject to arrest. The record does not establish under what authority the park security officers issue such notices.

warnings prior to being questioned by the park security officers.

## ANALYSIS

██ ██ *Miranda* warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody. *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). *Miranda* warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State. *State v. Sargent*, 111 Wn.2d 641, 647, 762 P.2d 1127 (1988) (citing *Miranda*, 384 U.S. at 444). Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary. *Sargent*, 111 Wn.2d at 647-48. The first and third requirements to invoke *Miranda* are at issue on appeal.[3]

### A. State Agent Requirement

As a threshold issue, we determine whether the park security officers were state agents for purposes of *Miranda*. The Court of Appeals, Division Three, held that questioning by any government employee comes within *Miranda* whenever prosecution of the defendant being questioned is among the purposes, either definite or contingent, for which the information is elicited, and such is the case where " 'the questioner's duties include the investigation or reporting of crimes.' " *Heritage*, 114 Wn. App. at 597-98 (quoting 2 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 6.10(c), at 624 (2d ed. 1999)). The court stated, "[A]rrest and prosecution of the juveniles was at least a contingent purpose of the questioning, and one of the duties of the security guards was the investigation of criminal activities in the park." *Heritage*, 114 Wn. App. at 598. Thus,

---

[3] The State conceded during oral argument that interrogation took place.

the court concluded that the park security officers were state agents under *Miranda* and that their actions invoked the *Miranda* rule.

Division One of the Court of Appeals took a different approach in *Wolfer*, 39 Wn. App. at 294, holding that *Miranda* warnings are required only when the interrogation is by law enforcement officers. The appellate court stated that the security guard at issue in that case was not a state agent because he was not " 'employed by an agency of government, federal, state or local, whose primary mission is to enforce the law.' " *Wolfer*, 39 Wn. App. at 294 (emphasis omitted) (quoting *People v. Wright*, 249 Cal. App. 2d 692, 694-95, 57 Cal. Rptr. 781, 782 (1967)). Because the state agent in *Wolfer* was not a "law enforcement officer," Division One concluded that *Miranda* warnings were not required.

In reaching this decision, Division One broadly read our holding in *State v. Valpredo*, 75 Wn.2d 368, 450 P.2d 979 (1969). In *Valpredo*, we considered whether *private* retail store security guards are required to give *Miranda* warnings. We said no. The *Wolfer* court read *Valpredo* "to hold that *Miranda* warnings need not be given by other than law enforcement officers." *Wolfer*, 39 Wn. App. at 294.

■ ■ *Miranda*'s applicability is not as narrow as the *Wolfer* court held. The United States Supreme Court in *Miranda* stated that "[b]y custodial interrogation, we mean questioning initiated by *law enforcement officers* after a person has been . . . deprived of his freedom in any significant way." *Miranda*, 384 U.S. at 444 (emphasis added). However, the United States Supreme Court since has clarified that "law enforcement officers" encompasses more than just police officers. In *Mathis v. United States*, 391 U.S. 1, 88 S. Ct. 1503, 20 L. Ed. 2d 381 (1968), the United States Supreme Court applied *Miranda* to an internal revenue agent conducting a "routine tax investigation." In *Estelle v. Smith*, 451 U.S. 454, 466, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), the United States Supreme Court held

that *Miranda* applies to court ordered psychiatric examinations. The Court added:

> That respondent was questioned by a psychiatrist designated by the trial court . . . , rather than by a police officer, government informant, or prosecuting attorney, is immaterial. When [the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution . . . , his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting.

*Estelle*, 451 U.S. at 467. *Miranda*, therefore, applies not only to law enforcement officers but to any "agent of the state" who "testifie[s] for the prosecution" regarding the defendant's custodial statements.

We have recognized this application in a previous discussion of *Miranda*. In *State v. Warner*, 125 Wn.2d 876, 889 P.2d 479 (1995), we considered application of the *Miranda* rule to a state-employed counselor in the context of a court ordered sex offender treatment program analogous to group therapy. Under the facts of the case, we found that the counseling session lacked the level of compulsion contemplated in *Miranda* to constitute "interrogation." *Warner*, 125 Wn.2d at 884. Further, we did not find a level of restraint analogous to a custodial situation beyond the fact that the defendant was already incarcerated at the time of the counseling session. Under the unique facts of the case, we reasoned that the counselors at issue were not the type of state employees implicated by the *Miranda* rule. However, we stated, "It is likely . . . any state employee [who] is conducting a 'custodial interrogation' would probably qualify as a state agent for [*Miranda*] purposes." *Warner*, 125 Wn.2d at 885.

Application of *Miranda* to a broader class of government employees rather than merely law enforcement officers is consistent with other jurisdictions. *See, e.g., State v. Trigon, Inc.*, 657 N.W.2d 441, 444 (Iowa 2003) (" '[W]hen a state official conducts a custodial interrogation that would require a *Miranda* warning if undertaken by a police officer,

then the official is similarly required to give a *Miranda* warning.' " (quoting *State v. Deases*, 518 N.W.2d 784, 790 (Iowa 1994))); *see also State v. Lekas*, 201 Kan. 579, 442 P.2d 11, 16 (1968) (holding that parole officers must give *Miranda* warnings "if the incriminating statements they elicit from a parolee are to be admissible as evidence in the prosecution of the new offense.").

Further, such an application generally is consistent with our cases deciding when a citizen is entitled to constitutional protections in the criminal context. We determine applicability of constitutional protections by an objective test: the belief of a reasonable person in the defendant's position. *See, e.g., State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003). Here, the security officers wore bullet proof vests under t-shirts bearing gold badges containing the words "Security Officer." They also wore a duty belt containing pepper spray, a collapsible baton, handcuffs, a radio, and a flashlight holder. The officers approached the juveniles and authoritatively asked questions. A reasonable person in Heritage's position would view such officers to be "law enforcement officers" with authority over him or her.

Based on these above facts, plus the fact that the parties do not dispute the park security officers were acting in their official capacity at the time they confronted the respondent, that their duties included the investigation or reporting of crimes, and that information elicited during interrogation was used to prosecute Heritage, we hold that the park officers were state actors for purposes of *Miranda*.

## B. Custody Requirement

■ The custody requirement to invoke *Miranda* is also at issue on appeal. In *Miranda,* the United States Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. In *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L.

Ed. 2d 317 (1984), the United States Supreme Court refined the definition of "custody." The court developed an objective test—whether a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest. *Id.* at 441-42. Washington has adopted this test. *See State v. Short*, 113 Wn.2d 35, 40, 775 P.2d 458 (1988).

In *Berkemer*, the United States Supreme Court also held that a brief Fourth Amendment seizure of a suspect, either in the context of a routine, on-the-street *Terry*[4] stop or a comparable traffic stop, does not rise to the level of "custody" for the purposes of *Miranda*. *Berkemer*, 468 U.S. at 439-40. Because a routine traffic stop curtails the freedom of a motorist such that a reasonable person would not feel free to leave the scene, a routine traffic stop, like a *Terry* stop, is a seizure for the purposes of the Fourth Amendment. *Id.* at 436-37. However, the Court recognized that because both traffic stops *and* routine *Terry* stops are brief, and they occur in public, they are "substantially less 'police dominated' " than the police interrogations contemplated by *Miranda*. *Id.* at 439. Thus, a detaining officer may ask a moderate number of questions during a *Terry* stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect "in custody" for the purposes of *Miranda*. *Id.* at 439-40. Washington courts agree that a routine *Terry* stop is not custodial for the purposes of *Miranda*. *See, e.g., State v. Hilliard*, 89 Wn.2d 430, 432, 435-36, 573 P.2d 22 (1977) (holding that suspect was not subject to custodial interrogation despite the fact that he would not have been allowed to leave until he answered questions). Thus, we must determine whether a reasonable person in Heritage's position would have believed her freedom was curtailed to a degree associated with arrest at the time she was asked, "Whose marijuana pipe is it?"

In this case, the park security guards approached Heri-

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

tage and her friends wearing their typical uniform, which included a t-shirt identifying them as park security and a duty belt with handcuffs. The guards did not physically detain or search anyone in the group. They immediately made it clear that they did not have the authority to arrest. Within the first minute or two of questioning they asked to whom the pipe belonged. Heritage admitted it was her pipe. An officer making a *Terry* stop may ask a moderate number of questions to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect "in custody" for the purposes of *Miranda. Berkemer*, 468 U.S. at 439-40. At the time the officers asked to whom the marijuana pipe belonged they were in the midst of asking a moderate number of questions related to their suspicions that members of the group were smoking marijuana. A reasonable person in Heritage's position would not have believed her freedom was curtailed to a degree analogous to arrest. The encounter was analogous to a *Terry* stop, not custodial interrogation, at the time Heritage admitted to ownership of the pipe.

Heritage also argues that the encounter amounted to custodial interrogation because she was a minor at the time, and her age made her more susceptible to the belief that she was not free to leave the encounter. Under the facts of this case, Heritage's minority would not ultimately modify this otherwise noncustodial encounter into a custodial one. The questioning occurred in public, Heritage was never isolated from her friends, and any doubts she might have had about the security guards' authority were eliminated by the guards' assurances, before questioning, that they could not arrest her. She admitted to ownership of the pipe after brief questioning directed at the group. Under these facts, even a 16 year old would not reasonably have believed she was detained to a degree analogous to arrest. We decline to decide whether the age of the suspect can ever be taken into account for purposes of the *Miranda* custody requirement.

We hold that the park security officers were state actors and that Heritage was not in custody for purposes of *Miranda* at the time she admitted to ownership of the marijuana pipe. We reinstate the trial court's adjudication.

ALEXANDER, C.J., and MADSEN, BRIDGE, and OWENS, JJ., concur.

CHAMBERS, J. (concurring in part and concurring in result) — I concur with the majority's analysis of state action and agree that these security officers were state agents. I also concur in result.

FAIRHURST, J. (concurring in part and concurring in result) — I concur with the majority's analysis that the defendant was not in custody. Given that assessment, it is not necessary to decide whether the city park security officers were state agents. I concur in the result.

IRELAND, J., concurs with FAIRHURST, J.