2016 FEB 29 AM 8:5



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72943-8-I |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| MICHAEL PARIS DARE, | ) | UNPUBLISHED |
| Appellant. | ) | FILED: February 29, 2016 |

Cox, J. — Under Miranda v. Arizona,[1] the State may not use incriminating statements a defendant made during a custodial interrogation unless officers informed the defendant of certain constitutional rights. Because Michael Dare was not in custody when he made the statements to the police officer that he sought to suppress below, we affirm.

In April 2014, Washington State Patrol Sergeant Chris Caiola was on duty in Snohomish County, traveling alone in his patrol vehicle. In an adjacent lane, he noticed a black Honda Accord. The driver appeared to be text messaging while driving. While stopped at a red light, Sergeant Caiola observed the driver nearly strike the car in front of him. Sergeant Caiola moved behind the Accord and activated his emergency lights. When the driver, later identified as defendant Michael Dare, failed to stop, Sergeant Caiola used his public address system to instruct him to pull over. The car eventually turned into a parking lot.

---

[1] 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Sergeant Caiola approached the car's open driver's side window. He observed the driver and three passengers, all of whom appeared nervous. Sergeant Caiola explained that he stopped the car because Dare was texting while driving, and asked for license, registration, and proof of insurance. Dare was unable to produce any of these documents. When Sergeant Caiola asked Dare why he didn't try to look for the car's registration and proof of insurance, Dare told him the car wasn't his—that he had borrowed it from a female acquaintance, whose nickname was "Satan."

To determine the car's ownership, Sergeant Caiola asked a police dispatcher to check the license plate number. After noticing that the vehicle identification number (VIN) on the car's dashboard did not match the VIN that the dispatcher reported as matching the plate number, Sergeant Caiola asked the dispatcher to check the car's VIN. He directed Dare and his passengers to "stay still" and keep their hands where he could see them. The dispatcher told Sergeant Caiola that the car had been reported stolen.

Sergeant Caiola did not tell Dare he had learned the car was stolen. Nor did he order anyone out of the car, handcuff anyone, or draw his service weapon. He asked dispatch to send backup officers, moved to a place "somewhat behind" the car, and waited for assistance.

When one of the car's passengers began to "get a little agitated," Dare asked Sergeant Caiola what was going on. Sergeant Caiola answered that he thought the car "might be stolen." Dare exclaimed, "I knew it!" Sergeant Caiola

2

asked Dare why he would say that. Dare told him "in so many words, that this gal Satan is known for stealing cars or he's known her to steal cars in the past."

Four or five additional officers arrived, and they and Sergeant Caiola ordered Dare and his passengers out of the car one by one, placing them in handcuffs. Sergeant Caiola told Dare he was under arrest and read him his Miranda rights, which Dare confirmed he understood. Then Sergeant Caiola and Dare spoke further for several minutes about how Dare came to be driving the car. Dare did not indicate that he did not wish to speak to Sergeant Caiola, nor did he ask to speak to an attorney. Sergeant Caiola drove Dare to the Snohomish County Jail and booked him into custody.

The State charged Dare with possession of a stolen vehicle. The disputed element of the charge was Dare's knowledge that the car was stolen. The defense theory was that Dare unwittingly borrowed a stolen car from an acquaintance.

The State moved for admission of Dare's statements under CrR 3.5, and Sergeant Caiola testified at a pretrial hearing. In its written findings and conclusions following the hearing, the trial court identified three separate verbal interactions between Dare and Sergeant Caiola that merited analysis under CrR 3.5. The trial court ruled that Sergeant Caiola detained Dare and his passengers as part of a legitimate Terry[2] stop and investigation and that during the portion of the detention directly following the traffic stop, Sergeant Caiola was not required

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

3

to inform Dare of his <u>Miranda</u> rights. However, the court ruled that from the point when "Trooper Caiola formed the suspicion the vehicle was likely stolen, and formed the intent to detain the occupants of the vehicle, and not to allow them to leave the scene," Dare was "in custody such that <u>Miranda</u> warnings were required prior to any subsequent interrogation."[3]

Notwithstanding this requirement, the court ruled that Dare's exclamation, "I knew it," was a "volunteered spontaneous statement" that was "not the product of custodial interrogation . . . [and] not affected by the absence of <u>Miranda</u> warnings." The court found, however, that Sergeant Caiola's follow-up question was "reasonably calculated to lead to a substantive statement by the defendant," and therefore constituted custodial interrogation. Thus, because Dare had not received <u>Miranda</u> warnings, his statements about why he "knew it" would be inadmissible in the State's case-in-chief, though admissible for impeachment purposes. Finally, the court ruled that Dare's post-<u>Miranda</u> statements were "voluntary, and not coerced," and thus admissible for all purposes.

Sergeant Caiola and Dare both testified at trial. Dare testified that he could not remember exactly what he said to Sergeant Caiola, but that he did not say he knew the car was stolen. He testified that if he did say, "I knew it," he meant that he knew they were in trouble, not that he knew the car was stolen.

The jury convicted Dare as charged.

---

[3] Clerk's Papers at 28.

Dare appeals. The State cross-appeals the trial court's determination that Dare was in custody for purposes of <u>Miranda</u> at any point before his formal arrest.

## SUPPRESSION MOTION

We review a trial court's denial of a motion to suppress by determining if substantial evidence supports the trial court's findings of fact and those findings support the court's conclusions of law.[4] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[5]

Determining whether a defendant is in custody is a mixed question of law and fact.[6] This court defers to the trial court's findings of fact but reviews the court's legal conclusions de novo.[7] Unchallenged findings of facts and those findings supported by substantial evidence are verities on appeal.[8]

### Custodial Interrogation

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." To preserve an individual's right against compelled self-incrimination, police must inform a suspect of this right before subjecting him or her to "(1)

---

[4] <u>State v. Jones</u>, 186 Wn. App. 786, 789, 347 P.3d 483 (2015); <u>State v. Fuentes</u>, 183 Wn.2d 149, 157, 352 P.3d 152 (2015).

[5] <u>State v. Levy</u>, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

[6] <u>See</u> <u>In re Pers. Restraint of Cross</u>, 180 Wn.2d 664, 681 n.7, 327 P.3d 660 (2014) (recognizing that "<u>Miranda</u> issues involve a mixed question of law and fact").

[7] <u>Id.</u> at 681.

[8] <u>State v. Homan</u>, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

custodial (2) interrogation (3) by an agent of the State."[9] When these conditions are present but Miranda warnings are not given, the suspect's "self-incriminating statements . . . are presumed to be involuntary, and to violate the Fifth Amendment."[10] A trial court must exclude such statements from the evidence at trial.[11]

Dare contends that from the point when Sergeant Caiola told him to stay still and keep his hands in front of him, he was subjected to custodial interrogation. Therefore, he argues, because Sergeant Caiola did not administer Miranda warnings at that point, the trial court erred by admitting Dare's statements. We disagree.

To determine whether a person is "in custody," the state supreme court has adopted the objective standard articulated by the United States Supreme Court in Berkemer v. McCarty.[12] The key question in this test is whether a "reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest."[13] Courts have recognized that investigatory stops are generally brief, public, and "'substantially

---

[9] Miranda, 384 U.S. at 444; State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004) (citing State v. Sargent, 111 Wn.2d 641, 647, 762 P.2d 1127 (1988)).
[10] Sargent, 111 Wn.2d at 648; accord Heritage, 152 Wn.2d at 214.
[11] Miranda, 384 U.S. at 444; State v. Warner, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).
[12] 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); Heritage, 152 Wn.2d at 217-18.
[13] Heritage, 152 Wn.2d at 218 (citing Berkemer, 468 U.S. at 441-42).

6

less police dominated' than the police interrogations contemplated by Miranda."[14] Consequently, "Washington courts agree that a routine Terry stop is not custodial for the purposes of Miranda."[15]

We agree with the trial court that Dare's exclamation of "I knew it!" was a spontaneous, voluntary statement to which Miranda did not apply.[16] However, we disagree with the court's conclusions that at the point Sergeant Caiola "formed the intent" to not allow Dare and his passengers to leave, Dare was in custody and Miranda applied, and therefore Caiola's follow-up question constituted custodial interrogation.

Contrary to the trial court's analysis, the relevant standard to determine custody is not the subjective intent of the officer. Rather, as explained above, the standard is objective and focuses on the suspect. Here, a reasonable person in Dare's position would not have believed his freedom was curtailed to the extent of a formal arrest until police ordered him out of the car, placed him in handcuffs, and gave him Miranda warnings. Dare's belief could not hinge on any subjective intent or belief of the officer.

---

[14] Heritage, 152 Wn.2d at 218 (internal quotation marks omitted) (quoting Berkemer, 468 U.S. at 439).

[15] Heritage, 152 Wn.2d at 218 (citing State v. Hilliard, 89 Wn.2d 430, 432, 435-36, 573 P.2d 22 (1977)).

[16] See State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985) (generally, statement is voluntary when spontaneous, unsolicited, and not the product of custodial interrogation); State v. Miner, 22 Wn. App. 480, 483, 591 P.2d 812 (1979) (spontaneous, voluntary, and unsolicited statements not coerced under Miranda).

When Dare told Sergeant Caiola that he "wouldn't put it past" Satan to have stolen the car Dare was driving, he was not in custody. Therefore, Sergeant Caiola's "why" question was not custodial interrogation. Until Dare's formal arrest, the investigatory stop did not escalate to custody necessitating Miranda warnings. Because Dare was not in custody at the time of his prearrest statements, we need not address his allegation that an impermissible two-step interrogation procedure rendered his postarrest statements inadmissible.

*Challenged Findings About Officer Safety*

Dare also challenges the trial court's findings that Sergeant Caiola's actions were partly motivated by concern for officer safety. It is not clear how these findings are relevant to any conclusion about custody. Nevertheless, we reject this argument.

To the extent Dare argues that substantial evidence does not support the court's findings, we disagree. Sergeant Caiola testified about Dare's delay before pulling over, about being outnumbered four to one, about the nervous demeanor of Dare and his passengers, and about confirming his suspicions that the car was stolen. He testified that in his experience, such situations "can turn volatile" quickly, which prompted him to keep his interactions with Dare to a minimum and take a position of partial cover while waiting for backup assistance to arrive. Substantial evidence supported these findings.

Because the Terry stop did not escalate to custody until Dare was ordered out of the car and formally arrested, he was not subjected to custodial

8

interrogation in violation of <u>Miranda</u>.  Although the trial court applied an erroneous standard to analyze the admissibility of Dare's statements, the court properly admitted Dare's statements for most purposes.  Denial of the motion to suppress was proper.

    We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Dwyer, J._          _Becker, J._