IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36262-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| P.W.W., | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — This appeal asks whether a law enforcement officer held

reasonable articulable suspicion to stop and question a minor as to possession of

marijuana, when the officer smelled marijuana coming from inside a car where the minor

sat. We agree with the trial court that the officer had cause to conduct a *Terry* stop. We

thereby affirm the conviction of Paul Williams for minor in possession of marijuana.

FACTS

We rely in part on the unchallenged findings of fact for our recitation of the facts.

We also rely on conversations captured by City of Moxee Police Sergeant Mark Lewis's

patrol vehicle camera, which video the trial court viewed during a motion to suppress hearing. We alter the names of the juvenile defendant and his teenage companions.

At approximately 5:15 p.m. on February 1, 2018, Sergeant Mark Lewis observed a silver Chevrolet Malibu roll through a stop sign at the intersection of St. Hilaire Road and Postma Road in Moxee, Washington. Sergeant Lewis stopped the vehicle on Faucher Road near Moxee Avenue and contacted the driver, later identified as Steven Enriquez. The Malibu bore three passengers. Defendant Paul Williams sat in the front passenger seat, Karl Martin in the right rear passenger seat, and Thomas Williams in the left rear passenger seat.

On approaching the driver's side window, Sergeant Mark Lewis smelled a strong odor of marijuana oozing from the vehicle. While observing the young appearance of the car's occupants, Sergeant Lewis asked Steven Enriquez for his age. Enriquez responded that he was seventeen years old. Enriquez added that his passengers were also seventeen years of age.

After returning to his patrol vehicle with Steven Enriquez's paperwork, Sergeant Mark Lewis reapproached Enriquez and asked him to exit the vehicle. Sergeant Lewis told Enriquez that he could smell marijuana in the vehicle and he knew all of the car's occupants were not at least eighteen years old. Enriquez denied that he possessed marijuana, that

2

marijuana resided in the car, or that any of his passengers held marijuana. Enriquez declaimed that his mother used marijuana and opined that his mother's marijuana could be the source of the smell. Sergeant Lewis frisked Enriquez and placed him in the back of his patrol vehicle. The remaining three occupants of the Malibu remained seated in the car.

Sergeant Mark Lewis returned to the silver Malibu and opened the front passenger's door. Lewis uttered to Paul Williams: "Hop out and come talk to me." Ex. 3 at 8 min., 8 sec. The two walked to the rear of the Malibu, where Sergeant Lewis commented:

> So the reason he's [Steven Enriquez] in the backseat of my car right now, [none of] you guys are eighteen years old, okay. I can smell the marijuana in that car, okay. So no one in this car can have a medical marijuana card to make it legal, okay. So what do you know about any marijuana in the car or on you or anything like that?

Ex. 3 at 8 min., 20 sec. to 8 min., 37 sec. Williams responded that he had smoked some marijuana earlier, but he presently possessed no marijuana on his person or in his backpack. Sergeant Lewis then told Williams:

> Honesty would go a long way here, I'm not looking to hem people up, 16-, 17-year-old kids up, okay. But if you're not going to be honest with me, then I only have one other way to go and that's the hard way. Does that make sense? Okay, so do you have any marijuana in your bag?

Ex. 3 at 8 min., 49 sec. to 9 min., 4 sec.; *see also* Clerk's Papers (CP) at 38.

*Urban Dictionary* defines "hem up" as being "caught." URBAN DICTIONARY,

3

https://www.urbandictionary.com/define.php?term=Hem%20Up (last visited Dec. 19, 2019). We do not know to what Lewis referred when he referenced a "hard way" and whether there exists a "soft way."

Paul Williams admitted he retained a "little blunt" of marijuana in his backpack. Ex. 3 at 9 min., 6 sec. to 9 min., 21 sec. A "blunt" is "a cigar that has been hollowed out and filled with marijuana." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/blunt (last visited Dec. 19, 2019). From the time Williams exited the Malibu to the time Williams admitted to possessing marijuana, fifty-eight seconds elapsed. Williams was not in handcuffs during the questioning.

When admitting to marijuana being inside his backpack, Paul Williams also acknowledged being under age eighteen. Honesty is an important value to Sergeant Mark Lewis. Lewis commended Williams for his honesty and asked if Steven Enriquez knew Williams possessed the marijuana. Williams answered that he never informed Enriquez that he had marijuana. Sergeant Lewis repeated his dislike for hemming up anyone. He stated:

> Like I said, I don't want to hem people up. If you're honest with me, I'm gonna work with you. You're a juvenile. You're not in a big ton of trouble, okay.

No. 36262-1-III
*State v. P.W.W.*

Ex. 3 at 10 min., 0 sec. to 10 min., 7 sec. We do not know how Lewis later "worked with" Williams in exchange for Williams's candor.

Sergeant Mark Lewis next asked Paul Williams questions to garner identifying information such as Williams's date of birth, middle name, and address. Sergeant Lewis instructed Williams to retrieve his backpack from inside the Malibu and deposit it on the trunk of the car. When Lewis asked if the backpack contained more than a blunt, Williams admitted to also possessing a jar of marijuana in his backpack.

PROCEDURE

The State of Washington charged Paul Williams with a person, under the age of twenty-one, possessing less than forty grams of marijuana. Williams moved to suppress the marijuana as evidence. He argued that Sergeant Mark Lewis lacked individualized suspicion to detain Williams pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) and that Sergeant Lewis obtained Williams's incriminating statements in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In response, the State contended that Sergeant Lewis possessed lawful authority to briefly detain Williams pursuant to *Terry*. Therefore, Lewis did not need to issue *Miranda* warnings.

5

The trial court denied Paul Williams's motion to suppress. The trial court entered the following conclusion of law, which Williams challenges on appeal:

> Sgt. Lewis had specific and articulable facts to reasonably support the intrusion. The automobile was occupied by four juveniles, he could smell the marijuana from within the vehicle, and none of the individuals were of an age to lawfully possess marijuana.

CP at 39.

Paul Williams agreed to a stipulated facts bench trial. During the proceedings, the trial court admitted a crime laboratory report, which read that seized green botanical material tested positive for marijuana. The trial court found Williams guilty of possessing less than forty grams of a controlled substance, marijuana, while under twenty-one years of age. The trial court sentenced Williams to twelve months of supervision and sixteen community service hours.

## LAW AND ANALYSIS

On appeal, Paul Williams assigns error to the trial court's refusal to grant his motion to suppress evidence of the marijuana. He contends that Sergeant Mark Lewis lacked individualized suspicion for a *Terry* detention because Lewis could not pinpoint the source of the smell of the marijuana to Williams. On appeal, Williams does not contend that Mark Lewis arrested him before he uttered his incriminating statements such that Lewis should have issued *Miranda* warnings.

6

We review a motion to suppress "to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law." *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Paul Williams assigns no error to the trial court's findings of fact. Unchallenged findings of fact are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). We review de novo a trial court's conclusions of law following a motion to suppress evidence. *State v. Eserjose*, 171 Wn.2d 907, 912, 259 P.3d 172 (2011).

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a police officer generally may not seize a person suspected of criminal activity without a warrant. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). The law affords, however, a few carefully drawn exceptions to the warrant requirement, and the State bears the burden to show that a warrantless seizure falls into one of the narrowly drawn exceptions. *State v. Weyand*, 188 Wn.2d at 811. A well-known exception to the warrant requirement is the *Terry* investigative stop. *State v. Fuentes*, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015).

Under *Terry*, an officer may "briefly detain a person for questioning, without a warrant, if the officer has reasonable suspicion that the person is or is about to be engaged

in criminal activity." *State v. Weyand*, 188 Wn.2d at 811. "A valid *Terry* stop requires that the officer have reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop." *State v. Fuentes*, 183 Wn.2d at 158. To evaluate the reasonableness of the officer's suspicion, this court looks at the totality of the circumstances known to the officer. *State v. Fuentes*, 183 Wn.2d at 158. "The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *State v. Weyand*, 188 Wn.2d at 811-12; *see also State v. Acrey*, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). The officer's suspicion must be individualized to the person being stopped. *State v. Fuentes*, 183 Wn.2d at 159.

The parties agree that Sergeant Mark Lewis stopped Paul Williams when Lewis ordered Williams out of the passenger side door of the Chevrolet Malibu. The State concedes a reasonable person would then not have felt free to leave. The question on appeal becomes whether Sergeant Lewis held specific and articulable facts to reasonably support the seizure. We answer in the affirmative.

Paul Williams relies primarily on *State v. Grande*, 164 Wn.2d 135, 187 P.3d 248 (2008). In *Grande*, State Trooper Brent Hanger pulled a vehicle over for having dark

windows. Trooper Hanger smelled marijuana wafting from the car and informed both

occupants that they were under arrest based solely on the odor of marijuana. A search

incident to the arrest of passenger Jeremy Grande revealed a pipe containing marijuana.

The *Grande* court applied the rule that the evidence to support probable cause for an

arrest must be individual to the arrestee. The court held that the "smell of marijuana in

the general area where an individual is located is insufficient, without more, to support

*probable cause for arrest*." *State v. Grande*, 164 Wn.2d at 146-47 (emphasis added).

The Washington Supreme Court in *State v. Grande* qualified its ruling:

> This does not mean, however, that a law enforcement officer must
> simply walk away from a vehicle from which the odor of marijuana
> emanates and in which more than one occupant is present if the officer
> cannot determine which occupant possessed or used the illegal drug. In this
> case, because the officer had training and experience to identify the odor of
> marijuana and smelled this odor emanating from the vehicle, he had
> probable cause to search the vehicle.

*State v. Grande*, 164 Wn.2d at 146. Because the police officer arrested both occupants

without first establishing individualized probable cause, the Supreme Court invalidated

Grande's warrantless arrest and the search incident to arrest.

*State v. Grande* bears little importance to Paul Williams's appeal. The facts in

*Grande* raised the question of whether the police officer had probable cause to arrest, a

higher constitutional bar than when an officer seizes an individual for brief, investigatory

9

questioning pursuant to *Terry*. A police officer may conduct an investigative stop based on less evidence than needed for probable cause to make an arrest. *State v. Acrey*, 148 Wn.2d at 746-47 (2003).

The State relies on our high court's decision in *State v. Heritage*, 152 Wn.2d 210, 95 P.3d 345 (2004). We agree that *State v. Heritage* is more apt.

In *State v. Heritage*, two bicycle security officers approached four juveniles and observed one member of the group smoking what appeared to be a marijuana pipe. Both officers detected an odor of marijuana and asked one of the juveniles whether the pipe belonged to him. When the juvenile denied ownership, the officers asked, "'Whose marijuana pipe is it?'" followed by, "'We're Park Security, let's move it along.'" *State v. Heritage*, 152 Wn.2d at 213. Tiffany Heritage admitted ownership.

In *State v. Heritage*, the Supreme Court considered the security officers to be police officers for purposes of the Fourth Amendment. The court observed that a routine traffic stop, like a *Terry* stop, qualifies as a "seizure" for Fourth Amendment purposes because the traffic stop "curtails the freedom of a motorist such that a reasonable person would not feel free to leave the scene." *State v. Heritage*, 152 Wn.2d at 218. The court recognized that, because traffic stops and *Terry* stops occur briefly in public, the stops are "substantially less police dominated than the police interrogations contemplated by

10

*Miranda.*"  *State v. Heritage*, 152 Wn.2d at 218 (internal quotation marks omitted).  The court noted that "a detaining officer may ask a moderate number of questions during a *Terry* stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect 'in custody' for the purposes of *Miranda.*"  *State v. Heritage*, 152 Wn.2d at 218.  The court concluded that the security officer's encounter with Tiffany Heritage equated to a *Terry* stop, not custodial interrogation, at the time Heritage admitted to ownership of the pipe.

We follow the teaching of *State v. Heritage*.  Sergeant Mark Lewis held grounds for the initial traffic stop based on Steven Enriquez's running of a stop sign.  Sergeant Lewis, based on his training and experience, smelled a strong odor of marijuana from within the Chevy Malibu.  Lewis had reason to believe that none of the Malibu's occupants were eighteen years of age or older.  Sergeant Lewis lacked probable cause to arrest any of the car's occupants simply for being inside the vehicle, but Lewis held reasonable suspicion that a minor possessed marijuana.  Lewis thereby possessed authority to briefly question Paul Williams to investigate whether, as an individual under twenty-one years of age, Williams illegally possessed marijuana.  Sergeant Lewis lawfully asked questions during the stop to confirm or dispel his suspicions.

11

No. 36262-1-III
*State v. P.W.W.*

CONCLUSION

We affirm the trial court's declination of Paul Williams's motion to suppress and the trial court's conviction of Williams for minor in possession of marijuana.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.