# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57109-9-II |
| Respondent, | |
| v. | |
| TRINNEL ANTHONY DIAL, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Trinnel Dial was charged with first degree unlawful possession of a firearm, along with several other crimes. At trial, Dial sought to exclude statements that he made to law enforcement officers at the time of his arrest, arguing that his waiver of *Miranda*[1] rights was involuntary due to his methamphetamine intoxication and the speed at which the officer read him his rights. The trial court ruled that Dial's statements were admissible. The jury found Dial guilty of first degree unlawful possession of a firearm, but not guilty as to all other counts.

Dial appeals his conviction, arguing that his statements to the officers were not voluntary and therefore should have been excluded, and that the State did not present sufficient evidence that he knowingly possessed the firearm at issue. We disagree and affirm Dial's conviction.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS

I. BACKGROUND

At 2:30 a.m. on August 18, 2021, Dial showed up at the home of Mary Trobee, who at that time had an off-and-on relationship with Dial. Trobee allowed Dial to sleep at her apartment, and he woke her up at 5:30 a.m. accusing her of being unfaithful and demanded she drive him to "see all these men [she] was sleeping with." Ex. 6A at 2. Eventually, they drove to an encampment and Dial got out of the car, and Trobee was able to drive away.

Later that morning, Dial returned to Trobee's apartment, where he and his friend called 911 for a wellness check on Trobee. Dial approached the officer that arrived at the apartment, asking the officer to enter the apartment to check on Trobee because he believed she was having a medical emergency. At some point after the officer spoke with Trobee, Dial left the scene. Trobee took several hours to fill out a handwritten statement for the officer. In her written statement, Trobee detailed the facts of what happened earlier that morning. According to Trobee's statement, during the car ride, Dial sat behind the passenger seat and held Trobee at gunpoint.

Later that evening of August 18 and just past midnight on August 19, Trobee went into her bathroom to collect garbage to take outside, and when she came out of the bathroom, Dial was in her kitchen. There was a bag on the ground, and neither of them knew who it belonged to, but it had a gun in it that was different than the one Dial had earlier in the day. Dial picked up the gun and was "flailing" it. 3 Verbatim Report of Proceedings (VRP) at 255. Trobee became nervous because her children were in the apartment, so she asked Dial if she could call 911.

When the officers arrived, they knocked on the apartment door and asked Dial to come outside. The officers noticed a bulge in Dial's pocket and asked him if he had a firearm, and Dial

2

told the officers he did. Dial was placed under arrest for unlawful possession of a firearm. Dial was charged with first degree kidnapping, first degree unlawful possession of a firearm, second degree assault, and felony harassment.

## II. CrR 3.5 Hearings

During the trial, the court held two CrR 3.5 hearings[2] to determine the admissibility of statements Dial had made to law enforcement officers. At both hearings, the trial court was able to watch footage from the testifying officers' bodycams that showed Dial's interactions with the officers.

At the first hearing, Officer Sargent Kieszling testified about the events occurring on the morning of August 18, 2021, when Dial told the officer that he needed to get into Trobee's apartment because she was in danger. The court ruled that Dial was not in custody when these statements were made and that Dial's statements to Officer Kieszling were admissible.

The second CrR 3.5 hearing concerned Dial's statements to law enforcement later that night, in the early hours of August 19, 2021, when Dial and Trobee found the gun in a bag in Trobee's apartment.

*a. Facts relevant to second statement*

Officer Jonathon Douglas explained that he and his partner, Officer Ruanni Franco, were dispatched to Trobee's apartment. Trobee was standing in the window when the officers arrived, but as they approached, Trobee passed by them and told them that Dial was in the apartment.

---

[2] CrR 3.5(a) provides: "When a statement of the accused is to be offered in evidence, the judge . . . shall . . . set the time for a hearing, . . . for the purpose of determining whether the statement is admissible."

The officers then knocked on the door and asked Dial to step outside. The officers "sat [Dial] down" on a bench right outside of the apartment while the officers had "a little conversation with him" about what had been going on that evening. 3 VRP at 309. During the conversation, Dial repeatedly referred to someone named Timmy that he said was either inside of the apartment or across a field in the trees, but the officers did not see the person that Dial was referring to. Officer Douglas testified that Dial appeared to be speaking normally and that he could understand Dial. With the exception of Dial referring to Timmy, he was forming coherent sentences.

Officer Franco could see something in Dial's pocket and asked him if he had a firearm on him. Dial responded that he did have a firearm in his pocket. Officer Douglas then verified that Dial had a prior felony conviction while Dial continued to talk about Timmy and had a conversation with Officer Franco. During this time, Dial was not yet under arrest. When asked whether Dial was free to leave, Officer Douglas responded: "At this point, he didn't express the need to leave, but during our investigating to make sure there is no domestic violence stuff going on, [Officer Franco was] probably not going to let [Dial] walk away at this point, just to be sure of what was going on." *Id.* at 317.

Once Officer Douglas confirmed Dial's felony conviction status, the officers put Dial under arrest for unlawful possession of a firearm. Officer Douglas advised Dial of his *Miranda* rights by reading from a card that was "issued at the Law Enforcement Academy." *Id.* at 319. It took Officer Douglas 17 seconds to read the card to Dial, but he slowed down when he asked Dial whether he understood his rights. Dial did not express any confusion about his rights, and Officer Douglas believed "it sounded like he acknowledged and he was well capable of understanding what was

4

going on." *Id.* at 321. After advising Dial of his rights, Officer Douglas asked Dial whether he knew he was not supposed to have a firearm. Dial responded, "[y]es." *Id.* at 331.

> *b. Dial's argument related to the second statement*

Dial argued that his mental state at the time of his conversation with the officers, as well as the speed at which he was advised of his *Miranda* rights, made it so that Dial's waiver was not voluntary and knowing and that his statements to the officers should be suppressed. The trial court explained that the officers were able to have a lucid conversation with Dial prior to the arrest, and that there was not enough evidence to show that Dial's mental state rendered his statements involuntary. Although the court expressed concern about the speed of the reading of the *Miranda* warnings, the court ultimately ruled that Dial was not in custody during his statements prior to the arrest and that, by a preponderance of the evidence, Dial was properly advised of his rights and made a knowing, intelligent, and voluntary waiver of his rights in his subsequent statements. Accordingly, all of Dial's statements from this encounter were admissible.

## III. TRIAL

At trial, Officers Kieszling, Douglas, and Franco testified to the facts set forth above.

Trobee testified that she had lied in her written statement to the police because she wanted Dial to get help for his drug problem. She testified that the gun Dial had in the car on the morning of August 18 was fake and, because she knew it was fake, she was not in fear for her life, but went along with what he said to appease him. Trobee also testified that Dial commonly used methamphetamine during their relationship, and that based on her observations on August 18, 2021, she believed Dial was high on methamphetamine. She also explained that he did not express any auditory or visual hallucinations when he was sober.

Dial's position at trial was that Trobee's written statement, that she later recanted in her testimony, was made up in an effort to get help for Dial. He also argued that he was too voluntarily intoxicated to "form the knowledge that is required to possess a firearm." 6 VRP at 575.

The to-convict instruction for first degree unlawful possession of a firearm provided that the State must prove "[t]hat on or between August 18, 2021, and August 19, 2021, the defendant knowingly had a firearm in his possession or control." Clerk's Papers (CP) at 196. Regarding knowledge, the jury was instructed:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

*Id.* at 198. The jury was also instructed that "[n]o act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, in determining whether the defendant acted with intent or knowledge, evidence of intoxication may be considered." *Id.* at 218.

The jury found Dial guilty of first degree unlawful possession of a firearm, but not guilty on all other counts. Dial appeals his conviction.

## DISCUSSION

### I. ADMISSIBILITY OF DIAL'S STATEMENTS TO LAW ENFORCEMENT

Dial argues that the trial court erred by denying his motion to suppress his statements to law enforcement because (1) he was in custody prior to being advised of his *Miranda* rights, and (2) after being so advised, his waiver of rights was involuntary because of his mental state and the speed at which the warnings were read. The State argues that Dial was not in custody prior to

6

Officer Douglas' Miranda advisement and that his post-Miranda statements were voluntary. We agree with the State.

A. LEGAL PRINCIPLES

The right not to incriminate oneself arises from the Fifth Amendment to the United States Constitution, as well as Article I, section 9 of the Washington Constitution. *State v. Radcliffe*, 164 Wn.2d 900, 905, 194 P.3d 250 (2008). To protect this right, a suspect must receive *Miranda* warnings when facing custodial interrogation by an agent of the State. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). A person is in custody if "a reasonable person in a suspect's position would have felt that [their] freedom was curtailed to the degree associated with a formal arrest." *Id.* at 218.

If a suspect does not receive *Miranda* warnings, their statements are presumed involuntary and must be excluded. *Id.* at 214. If a suspect received *Miranda* warnings and proceeded to give a statement, the State bears the burden to show that the suspect knowingly, intelligently, and voluntarily waived their *Miranda* rights. *State v. Athan*, 160 Wn.2d 354, 380, 158 P.3d 27. "A defendant's mental disability and use of drugs at the time of a confession are [factors to be] considered, but those factors do not necessarily render a confession involuntary." *State v. Aten*, 130 Wn.2d 640, 664, 927 P.2d 210 (1996). Rather, courts look to the totality of the circumstances to determine whether a confession is voluntary. *Id.* at 663-64.

"We will not disturb a trial court's conclusion that a waiver was voluntarily made if the trial court found, by a preponderance of the evidence, that the statements were voluntary and substantial evidence in the record supports the finding." *Athan*, 160 Wn.2d at 380. Evidence is

substantial if the record contains a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the assertion. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

B. DIAL WAS NOT IN CUSTODY PRIOR TO THE *MIRANDA* WARNING

Prior to the *Miranda* advisement, the statement Dial made to the officers that he sought to exclude was responding yes to Officer Franco's question of whether Dial had a firearm on him. Dial argues that a reasonable person in his position would not have felt free to leave because Officer Douglas' phrase "[w]e sat him down" implied that the officers commanded him to sit and that it was not Dial's choice, and because Officer Douglas testified that the officers were "probably not going to let [Dial] walk away at this point." 3 VRP at 309, 317.

Dial's argument takes the officer's latter statement out of context. Officer Douglas testified that the officers were "probably not going to let him walk away at this point, just to be sure of what's going on" because they knew Dial had a firearm and were investigating whether there was a domestic violence incident. *Id.* at 317. Moreover, demonstrating that Dial was subjected to a *Terry*[3] stop does not equate to showing he was in "custody" for purposes of *Miranda*. *Heritage*, 152 Wn.2d at 218. Furthermore, the fact that Dial sat on the bench outside of the apartment after the officers "sat him down," although it may not have necessarily been his choice to do so, by no means curtailed Dial's freedom "to the degree associated with a formal arrest." *Id.* As noted in the trial court's order, simply asking Dial whether he had a firearm in his pocket, which was visible to the officers, was important for the officers' safety.[4]

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[4] Officer safety is an important factor in determining the reasonableness of an officer's actions. *See Id.* at 24; *State v. Lane*, 77 Wn.2d 860, 863, 467 P.2d 304 (1970).

We hold that Dial was not in custody prior to being advised of his *Miranda* rights, and that the trial court did not err by denying Dial's motion to exclude his statement that he had a firearm in his pocket.

## C. DIAL'S WAIVER WAS VOLUNTARY

After Dial was advised of his *Miranda* rights, the statement Dial made to the officers that he sought to exclude was responding yes to Officer Douglas' question of whether Dial knew he was not supposed to have a firearm. Dial argues that he experienced delusions due his methamphetamine use when speaking with Officers Douglas and Franco, as evidenced by his referring to an imaginary person named Timmy, and that the trial court disregarded Dial's mental state when ruling on the admissibility of his statement. He further argues that the officers "capitalized on Mr. Dial's vulnerability" by reading him his rights too quickly. Br. of Appellant at 21.

As an initial matter, Dial's response to the question of whether he knew he was not supposed to have a firearm did not satisfy any element of the crime for which he was arrested. It was not necessary that Dial knew he was not supposed to have a firearm in order to be guilty for first degree unlawful possession of a firearm, and the jury was instructed as such. *See* RCW 9.41.040(1)(a).[5]

Nevertheless, the trial court did take Dial's mental state into account. However, the trial court concluded that the evidence did not support a finding that Dial's mental state rendered his statements involuntary, considering the officers were able to have a conversation with him and

---

[5] RCW 9.41.040 has been amended since the events of this case. *See* LAWS OF 2021, ch. 215, § 72; LAWS OF 2022, ch. 268, § 28. Because these amendments do not affect our analysis, we cite to the current version of the statute.

that the officers and Dial did not have any issues understanding each other. Officer Douglas testified that Dial was forming coherent sentences and was speaking normally, with the exception of referring to Timmy. The trial court was able to watch video footage of Officer Douglas advising Dial of his *Miranda* rights and, although it was concerned about the speed (17 seconds), it ruled that Dial's waiver was voluntary.

Looking at the totality of the circumstances, substantial evidence supports the trial court's ruling. Accordingly, we affirm the trial court's CrR 3.5 orders.

## II. SUFFICIENCY OF THE EVIDENCE

Dial argues that the State did not present sufficient evidence that he was knowingly in possession of a firearm. We disagree.

### A. LEGAL PRINCIPLES

There is sufficient evidence to sustain a conviction if any rational trier of fact could have found each element of the charged crime beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence, and we view the evidence and all reasonable inferences in the light most favorable to the State. *Id.* at 265-66.

### B. ANALYSIS

Under RCW 9.41.040(1)(a), a person is guilty of first degree unlawful possession of a firearm if the person owns or has in their possession or control any firearm after having previously been convicted of a serious offense. The to-convict instruction provided that the State must prove "[t]hat on or between August 18, 2021, and August 19, 2021, the defendant *knowingly* had a firearm in his possession or control." CP at 196 (emphasis added).

Dial argues that the State failed to present sufficient evidence to prove that he knowingly possessed the firearm due to his methamphetamine intoxication. As noted above, the evidence of Dial's mental state in the record at the time Dial possessed the firearm at issue was that he was seeing a person named Timmy that the officers did not see. Trobee's testimony established that neither she nor Dial knew who the firearm belonged to, but that he picked it up and was holding it, prompting her to call 911. When the officers arrived, they noticed something in Dial's pocket and asked him if he had a firearm, and Dial told the officers he did. The jury considered and rejected Dial's involuntary intoxication argument after being instructed that evidence of intoxication may be considered in determining whether Dial acted with knowledge.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, there was sufficient evidence that Dial knowingly possessed the firearm. The jury was instructed that a person acts knowingly when they are "aware of that fact," and it is a reasonable inference that Dial was aware that he possessed the firearm by answering affirmatively to Officer Franco's question of whether he had a firearm. CP at 198. Accordingly, we affirm Dial's conviction for first degree unlawful possession of a firearm.

## CONCLUSION

We hold that Dial's statements to the law enforcement officers were admissible and that the State presented sufficient evidence that Dial knowingly possessed the firearm. Accordingly, we affirm Dial's conviction for first degree unlawful possession of a firearm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 57109-9-II

CRUSER, A.C.J.

We concur:

VELJACIC, J.

CHE, J.

12