[No. 39039-6-II.   Division Two.   September 14, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. TONY CURTIS
HICKMAN, *Appellant*.

768

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*L. Michael Golden, Prosecuting Attorney,* and *Douglas P. Ruth, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found Tony Curtis Hickman guilty of failing to register as a sex offender. Hickman appeals his conviction, asserting that under *Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004), the trial court erred by refusing to suppress his post-*Miranda*[1] statements made to an interrogating officer because the officer failed to advise him that his pre-*Miranda* statements could not be used as evidence against him. Hickman also contends that the trial court erred by admitting his statements at trial because the State failed to first establish the corpus delicti by independent evidence. Because, under the unique facts of this case, the interrogation technique employed here compromised *Miranda*'s central concerns and deprived Hickman of knowledge essential to his ability to understand the nature of his Fifth Amendment right to remain silent, the trial court erred when it refused to suppress his post-*Miranda* statements. Accordingly, we reverse and remand.

## FACTS

¶2 On November 3, 2008, the State charged Hickman with failure to register as a sex offender contrary to former RCW 9A.44.130 (2006). A jury trial began on March 12, 2009. Before trial, the trial court held a CrR 3.5 hearing to determine the admissibility of statements Hickman made to Lewis County Sheriff's Detective Brad Borden.

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶3 At the CrR 3.5 hearing, Detective Borden testified that on October 16, 2008, he tried to locate Hickman at his registered address, 701 North Tower in Centralia, Washington. Borden stated that when he discovered that the 701 North Tower address did not exist, he attempted to locate Hickman at 701 South Tower. Borden further testified that when he spoke with residents at 701 South Tower, they told him that Hickman had moved out in July 2008. Borden stated that he asked the residents to have Hickman contact him.

¶4 Hickman called Detective Borden later that same day. Borden told Hickman that he needed to come to the Lewis County Sheriff's office to properly register. After Hickman arrived, Borden told him that they would have a two-part interview consisting of an administrative interview to register him followed by an advisement of his *Miranda* rights and a criminal investigation for his suspected failure to register. Borden then questioned Hickman about his current address and had him sign a new registration form.

¶5 After Hickman registered his new address, Detective Borden stopped the interview, explained that they were now going to shift into the criminal investigation, and advised him of his *Miranda* rights. Borden asked Hickman where he had been living and at what times he had lived at different places. Hickman told Borden that he had been living on South Tower Avenue until July 1, 2008, at which point he became transient until October 10, 2008, when he began living at his then current address. Borden then asked Hickman if he would be willing to make a taped statement, which Hickman agreed to do; Borden read Hickman his *Miranda* rights a second time and Hickman indicated that he understood his rights and was willing to talk to the detective.

¶6 The trial court suppressed Hickman's pre-*Miranda* statements, finding that Detective Borden had subjected Hickman to custodial interrogation at the time he

made the statements.[2] The trial court also suppressed Hickman's post-*Miranda* statement regarding his new address. But the trial court did not suppress Hickman's remaining post-*Miranda* statements, finding that the second part of the interview was sufficiently separate from the first part of the interview because of Borden's explanation that it was for a criminal investigation.

¶7 When the State offered to admit Hickman's statements at trial, defense counsel objected, asserting that the State failed to establish the corpus delicti with evidence independent of Hickman's statements. The trial court overruled the objection, reasoning that the nonexistent "North Tower" address listed on Hickman's registration form was sufficient to establish the corpus delicti. Detective Borden testified that he and Hickman had discussed the discrepancy on Hickman's registration form regarding the 701 North Tower address and that Hickman had told him that he moved from the 701 South Tower address on July 1, 2008. Borden further testified that Hickman did not register a new address until October 16, 2008. The jury found Hickman guilty of failing to register as a sex offender and the trial court sentenced him to 10 days incarceration followed by 36 to 48 months of community custody. Hickman timely appeals his conviction.

## ANALYSIS

### CrR 3.5 HEARING

¶8 Citing *Seibert*, Hickman first contends that the trial court erred by admitting his post-*Miranda* statements in violation of his constitutional right against self-incrimination. Specifically, Hickman contends that *Seibert* prohibits

---

[2] We note that the trial court failed to enter written findings of fact and conclusions of law following its CrR 3.5 ruling as required under CrR 3.5(c). But a trial court's failure to enter written findings is harmless if the trial court's oral opinion and the hearing record are sufficiently comprehensive and clear that written facts would be a mere formality. *State v. Smith*, 76 Wn. App. 9, 16, 882 P.2d 190 (1994), *review denied*, 126 Wn.2d 1003 (1995). Here, the trial court's oral ruling is sufficiently clear to facilitate appellate review.

the two-step interrogation process employed by Detective Borden and that the trial court was required to suppress his post-*Miranda* statements because Borden did not take sufficient curative measures after obtaining his pre-*Miranda* statements. We agree.

¶9 The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." This provision intends "to prohibit the compelling of self-incriminating testimony from a party or witness." *State v. Russell*, 125 Wn.2d 24, 59, 882 P.2d 747 (1994) (citing *State v. Moore*, 79 Wn.2d 51, 56, 483 P.2d 630 (1971)), *cert. denied*, 514 U.S. 1129 (1995). *Miranda* warnings protect a defendant from making incriminating statements to police while in the coercive environment of police custody. *See State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004) (citing *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987)). Police must advise a suspect of his *Miranda* rights before questioning him in a custodial setting. *See Heritage*, 152 Wn.2d at 214 (citing *State v. Sargent*, 111 Wn.2d 641, 647, 762 P.2d 1127 (1988)); *see also Miranda*, 384 U.S. at 444. Absent *Miranda* warnings, a suspect's statements during a custodial interrogation are presumed involuntary. *Heritage*, 152 Wn.2d at 214 (citing *Sargent*, 111 Wn.2d at 647-48). But "a confession is voluntary, and therefore admissible, if made after the defendant has been advised concerning rights and the defendant then *knowingly*, voluntarily and intelligently waives those rights." *State v. Aten*, 130 Wn.2d 640, 663, 927 P.2d 210 (1996) (emphasis added).

¶10 In *Seibert*, interrogating officers deliberately questioned a suspect without providing *Miranda* warnings until the suspect confessed, at which point officers advised the suspect of her *Miranda* rights, acquired a waiver from her, and then resumed interrogation while referring to the suspect's earlier pre-*Miranda* admissions to elicit a post-*Miranda* confession. 542 U.S. at 604-06. The United States Supreme Court, in a plurality opinion, found that this

interrogation technique rendered *Miranda* warnings ineffective and held that the post-*Miranda* statements were inadmissible, observing that "[t]he object of question-first [interrogation practice] is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give [the warnings], after the suspect has already confessed." *Seibert*, 542 U.S. at 611. Justice Kennedy's concurring opinion in *Seibert* states,

> I would apply a narrower test applicable only in the infrequent case, such as we have here, in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning.
>
>     . . . If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made. Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver. For example, a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. Alternatively, an additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient.

542 U.S. at 622 (citation omitted).

¶11 Several lower federal and state courts assume without analysis that Justice Kennedy's concurring opinion represents the narrowest holding in *Seibert*. *See, e.g., United States v. Nunez-Sanchez*, 478 F.3d 663, 668 n.1 (5th Cir. 2007) ("Justice Kennedy provided the fifth vote in a 5-4 decision, and decided the case on narrower grounds than the majority."); *People v. Rios*, 179 Cal. App. 4th 491, 495, 101 Cal. Rptr. 3d 713 (2009) ("the controlling constitutional rule in *Seibert* is that set forth in Associate Justice Anthony M. Kennedy's concurring opinion"). Other courts have acknowledged the difficulty in determining whether the *Seibert* plur-

ality or Justice Kennedy's concurrence represents the *Seibert* holding. *See, e.g., United States v. Pacheco-Lopez*, 531 F.3d 420, 427 n.11 (6th Cir. 2008) ("Most circuits have assumed that Justice Kennedy's concurrence operates as the controlling precedent, though others have raised doubts about whether his concurrence actually represents the narrowest grounds for decision."); *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir.) ("Determining the proper application of the *Marks* [*v. United States*, 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)] rule to *Seibert* is not easy, because arguably Justice Kennedy's proposed holding in his concurrence was rejected by a majority of the Court."), *cert. denied*, 549 U.S. 1065 (2006).

¶12  Generally, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks*, 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)). This inquiry, referred to as the "*Marks* rule," does not require us to determine a single opinion which a majority joined, but rather determine the "legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree." *Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 693 (3d Cir. 1991), *aff'd in part, rev'd in part on other grounds*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). In applying the *Marks* rule to the *Seibert* opinion, we hold that the controlling constitutional rule of *Seibert* is that which has been articulated in *United States v. Williams*, 435 F.3d 1148, 1157-58 (9th Cir. 2006):

> [A] trial court must suppress postwarning confessions obtained during a deliberate two-step interrogation where the midstream *Miranda* warning—in light of the objective facts and circumstances—did not effectively apprise the suspect of his rights. Although the [*Seibert*] plurality would consider all

two-stage interrogations eligible for a *Seibert* inquiry, Justice Kennedy's opinion narrowed the *Seibert* exception to those cases involving deliberate use of the two-step procedure to weaken *Miranda's* protections. . . . This narrower test—that excludes confessions made after a deliberate, objectively ineffective mid-stream warning—represents *Seibert's* holding. In situations where the two-step strategy was not deliberately employed, [*Oregon v. Elstad*, 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985)] continues to govern the admissibility of postwarning statements.

¶13 Although the *Williams* court held that *Seibert* requires a trial court to determine whether an interrogator deliberately employed a two-step interrogation technique to undermine *Miranda*, it did not require trial courts to look to the subjective intent of the interrogator. Instead, the *Williams* court determined that the *Seibert* test requires trial courts

[to] consider whether objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning. Such objective evidence would include the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements.

435 F.3d at 1158-59 (footnote and citations omitted).

¶14 Under *Seibert*, as interpreted in *Williams*, the deliberate interrogation technique employed here failed to apprise Hickman of knowledge essential to his ability to understand the nature of his Fifth Amendment right to remain silent. Accordingly, the trial court erred when it refused to suppress Hickman's post-*Miranda* statements.

¶15 Here, Detective Borden informed Hickman that he would conduct the interview in two parts, but he did not inform Hickman that the information given in the first part of the interview could not be used against him at a subsequent criminal proceeding for violating his reporting conditions. Then, during the non-*Miranda* part of the inter-

view, Borden elicited statements from Hickman that indicated he had been in violation of reporting requirements. Because failing to register as a sex offender, former RCW 9A.44.130, is a status offense, Hickman's pre-*Miranda* statement informing Borden of his current address, coupled with the date of the move, amounted to a confession that he had been in violation of his reporting requirements. Thus, Borden's two-part interview placed Hickman in the impossible position of choosing between confessing to a past registration violation or committing a new violation by refusing to participate in Borden's "administrative" interview.

¶16 Under these unique facts and circumstances, Detective Borden's midstream *Miranda* warnings, without a significant break in time or place and without informing Hickman that his pre-*Miranda* statements could not be used against him in a subsequent criminal prosecution, did not inform Hickman of his Fifth Amendment right to silence sufficiently to enable him to knowingly determine whether to exercise that right. Accordingly, the trial court erred by admitting Hickman's post-*Miranda* statements.[3]

¶17 We reverse Hickman's failure to register as a sex offender conviction and remand for further proceedings consistent with this opinion.

BRIDGEWATER and ARMSTRONG, JJ., concur.

---

[3] Because we hold that the trial court erred by refusing to suppress Hickman's statements, we do not address his corpus delicti claim.