# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46291-5-II |
| Respondent, | |
| v. | |
| CAITLYN M. LEDERER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Caitlyn M. Lederer appeals her conviction for one count of unlawful possession of a controlled substance (methamphetamine). Lederer argues that the trial court erred in not suppressing her post-*Miranda*[1] warning statements because the police officers deliberately used the two-step interrogation procedure to undermine *Miranda* and erred in admitting her statements at trial in violation of the corpus delicti[2] of the crime charged. We hold that Lederer's post-*Miranda* warning statements were admissible and the trial court did not violate the corpus delicti rule. Therefore, we affirm.

## FACTS

Corporal Timothy Ripp and Deputy Michael Leiter of the Mason County Sheriff's Office (the officers) went to Lederer's home to arrest her on an outstanding warrant. Lederer was at home

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The substantial and fundamental fact or facts necessary to prove the commission of a crime; the material substance upon which a crime has been committed; literally, body of the crime. *Merriam–Webster Unabridged*, *available at* http://unabridged.merriam-webster.com.

with a companion, Dudley Kirby. Kirby answered Ripp's knock on the door. Ripp arrested Lederer. Because Lederer's arrest was due to an outstanding warrant rather than a criminal investigation that would have led to a foreseeable interrogation, Ripp did not immediately read the *Miranda* warnings to Lederer. Meanwhile, after Leiter learned that Kirby also had an outstanding arrest warrant, he arrested Kirby. Leiter searched Kirby incident to arrest and found methamphetamine in Kirby's pants pocket.

Leiter, believing that Ripp had already read Lederer her *Miranda* rights, approached Lederer as she sat in the back seat of Ripp's patrol car, and questioned her about the methamphetamine in Kirby's pocket. Ripp then interrupted Leiter and informed him that he had not yet read the *Miranda* warnings to Lederer. Ripp then advised Lederer that she was being recorded and advised her of her *Miranda* rights. Lederer stated that she understood her rights, and that she agreed to speak to Ripp. Lederer then made several incriminating statements to Ripp and admitted that the methamphetamine in Kirby's pocket belonged to her.

The State charged Lederer with unlawful possession of a controlled substance (methamphetamine). Lederer moved to suppress her post-*Miranda* warning statements and the trial court denied that motion after a CrR 3.5 hearing. The trial court made the following pertinent unchallenged finding of fact:

> [Lederer] was placed in the back of Corporal Ripp's police car in handcuffs. While Corporal Ripp was in the process of operating his dash camera/video, Deputy Leiter opened the back passenger side of Corporal Ripp's police vehicle and questioned [Lederer] about [the] methamphetamine. Whereupon, Corporal Ripp intervened and advised Deputy Leiter that he had not yet read [Lederer] her Miranda rights. Shortly after this exchange Corporal Ripp advised [Lederer] that [she] was being recorded and advised [Lederer] of her Miranda rights. [Lederer] acknowledged that she understood and agreed to speak to Corporal Ripp. [Lederer] made several incriminating statements to Corporal Ripp during the course of an approximately

2

thirty minute car ride. At no time did [Lederer] invoke any of her constitutional rights. The conversation was recorded and admitted into evidence as Exhibit 1 and incorporated hereto by reference. In summary, [Lederer] acknowledged that she possessed the methamphetamine that was found in Dudley Kirby's pocket, and that she had used the methamphetamine with Kirby that evening shortly before the police arrived at [her home].

Clerk's Papers (CP) at 6 (Finding of Fact (FF) 5).

The trial court concluded that, after considering the totality of the circumstances surrounding Lederer's custodial interrogation, her self-incriminating statements "were freely and voluntarily given and not coerced." CP at 6 (Conclusion of Law (CL) 1). The trial court further concluded that Lederer "was advised of her Miranda rights and waived her constitutional rights." CP at 6 (CL 2). Lastly, the trial court concluded that "[t]he objective and available subjective evidence, including the officer's testimony, does not support an inference that [the officers] employed a deliberate 'two-step' process designed to coerce [Lederer] or circumvent the requirements of Miranda." CP at 6 (CL 3). Thus, the trial court ruled that Lederer's post-*Miranda* warning statements were admissible because she validly waived her constitutional rights and the officers did not deliberately circumvent *Miranda*.

Lederer also moved to exclude her statements under the corpus delicti rule, arguing that her post-arrest statements were the only evidence of her constructive possession of the methamphetamine. The trial court denied that motion, concluding that the State provided independent evidence that supported "a logical and reasonable inference that the crime of unlawful possession of a controlled substance occurred." CP at 7 (CL 4).

Following a bench trial, the trial court found Lederer guilty as charged. Lederer appeals.

ANALYSIS

I. POST-*MIRANDA* STATEMENTS

Lederer argues that her post-*Miranda* warning statements were inadmissible because the officers failed to give the *Miranda* warnings before questioning her about the methamphetamine, and Ripp provided the *Miranda* warnings mid-interrogation, after she had admitted it was hers. She argues that the officers deliberately employed this two-step interrogation procedure in violation of her constitutional rights.[3] We disagree.

A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise. *Russell*, 180 Wn.2d at 866-67. We review conclusions of law de novo. *Russell*, 180 Wn.2d at 867. Unchallenged findings of fact are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

B. LEGAL PRINCIPALS ON TWO-STEP INTERROGATION PROCEDURE

The Fifth Amendment and the Washington Constitution guarantee the right against self-incrimination. U.S. CONST. amends. V, XIV; CONST. art. I, § 9. Before subjecting a suspect to custodial interrogation, an officer must first provide the suspect with the *Miranda* warnings—that he or she has the right to remain silent, anything he or she says can be admitted in court against

_____

[3] There is no dispute that Lederer's pre-*Miranda* statements are inadmissible.

him or her, the suspect has a right to an attorney, and if he or she cannot afford an attorney, the court will appoint one. *State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 950 (2015).

The two-step interrogation procedure occurs when an interrogator questions a suspect without first providing the *Miranda* warnings, and the suspect makes incriminating statements; then only after the interrogator provides the *Miranda* warnings and the suspect waives his or her rights, the interrogator again questions the suspect and obtains a second set of statements. *See Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004). We utilize the *Williams* test to determine the admissibility of statements made after a two-step interrogation procedure. *State v. Rhoden*, 189 Wn. App. 193, 201-02, 356 P.3d 242 (2015); *U.S. v. Williams*, 435 F.3d 1148 (9th Cir. 2006) (holding that post-*Miranda* statements may be admissible after a deliberate use of a two-step interrogation procedure if curative measures are present).

First, we determine whether the officer deliberately used the two-step interrogation procedure to undermine the effectiveness of the *Miranda* warnings after the suspect has already confessed. *Rhoden*, 189 Wn. App. at 200-01. We consider the objective evidence and "any available subjective evidence, such as an officer's testimony," to determine whether the record supports an inference that the two-step interrogation procedure was used to undermine the *Miranda* warnings. *Rhoden*, 189 Wn. App. at 201 (internal quotation marks omitted) (quoting *U.S. v. Williams*, 435 F.3d at 1158). Second, if we determine that the interrogator deliberately used the two-step interrogation procedure, we then determine whether the officer's *Miranda* warnings were adequate to advise the suspect of the choice to remain silent after the first admission. *Rhoden*, 189 Wn. App. at 201.

However, if we determine that the interrogator did *not* deliberately use the two-step interrogation procedure, the admissibility of post-*Miranda* warning statements is governed by *Oregon v. Elstad*, 470 U.S. 298, 105 S. Ct. 1285, 84 L. 3d. 2d 222 (1985). *State v. Hickman*, 157 Wn. App. 767, 775, 238 P.3d 1240 (2010) (quoting *Williams*, 435 F.3d at 1157-58). Under *Elstad*, a suspect's statements after voluntary waiver of his or her constitutional rights will not be suppressed unless the interrogator obtained the waiver by "actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his [or her] free will. *Elstad*, 470 U.S. at 309. The coercion must so taint the investigatory process that "a subsequent voluntary and informed waiver is ineffective for some indeterminate period." *Elstad*, 470 U.S. at 309.

The State bears the burden of demonstrating a voluntary waiver by a preponderance of the evidence. *State v. Campos-Cerna*, 154 Wn. App. 702, 709, 226 P.3d 185 (2010). We review de novo whether the defendant's waiver was valid by considering the totality of the circumstances. *Campos-Cerna*, 154 Wn. App. at 708.

## C. LEDERER'S POST-*MIRANDA* WARNING STATEMENTS ARE ADMISSIBLE

Lederer argues that she did not validly waive her constitutional rights after Ripp read her the *Miranda* warnings because the objective evidence demonstrated that Ripp and Leiter deliberately used the two-step interrogation procedure and the *Miranda* warnings did not effectively advise her of her constitutional rights. We disagree.

The trial court's finding of fact 5, to which Lederer does not assign error, supports the conclusion of law that the officers did not deliberately use the two-step interrogation procedure. While Ripp, was occupied with operating his dash camera, Leiter approached Lederer while she was handcuffed in the backseat of Ripp's police car and began to ask her questions. CP at 5 (FF

6

5). However, Ripp "intervened" and informed Leiter that Lederer had not yet been advised of her *Miranda* rights. CP at 5 (FF 5). Ripp then read Lederer her *Miranda* rights and advised her that she was being recorded. CP at 5 (FF 5). In *Hickman*, this court held that there existed objective evidence that the officer deliberately employed the two-step interrogation procedure when the officer explained that an interview would involve two parts, an "administrative" portion and an "investigati[ve]" portion, and the person would receive the *Miranda* warnings only before the investigative portion, yet the officer elicited incriminating information in both portions. *Hickman*, 157 Wn. App. at 770, 775. However, here the trial court's findings of fact do not contain any objective evidence that the officers deliberately used the two-step interrogation procedure because Leiter was not aware that Lederer had not yet been given her the *Miranda* warnings before he began questioning her and Ripp intervened to interrupt the questioning and provide Lederer with her *Miranda* rights.

Because the findings here do not contain any evidence of deliberate intent to undermine the effectiveness of the *Miranda* warnings, *Elstad* governs whether Lederer's post-*Miranda* statements followed a voluntary waiver of her rights. *Hickman*, 157 Wn. App. at 775. The trial court's unchallenged findings of fact support the conclusion of law that Lederer voluntarily waived her constitutional rights. The findings do not demonstrate that the officers coerced Lederer into waiving her rights. Instead, Lederer affirmatively acknowledged that she understood her rights and agreed to speak to Ripp before making several self-incriminating statements. Thus, Lederer validly waived her rights. Therefore, Lederer's self-incriminating post-*Miranda* statements were admissible.

II. CORPUS DELICTI

Lederer also argues the trial court erred in admitting her post-*Miranda* warning statements in violation of the corpus delicti of the crime charged. We disagree.

The term "corpus delicti" means the "'body of the crime.'" *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (internal quotation marks omitted) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). Under the corpus delicti rule, a conviction cannot be supported solely by the defendant's own self-incriminating statements. *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). The State must produce independent evidence other than the defendant's confession to provide prima facie corroboration that the crime described in the defendant's statement actually occurred, but this evidence need not be sufficient to support the conviction on a sufficiency of the evidence basis. *Brockob*, 159 Wn.2d at 328. "Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a 'logical and reasonable inference' of the facts sought to be provided." *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656). We review whether the State presented independent evidence under the corpus delicti rule in the light most favorable to the State. *Brockob*, 159 Wn.2d at 328.

Here, the crime described in Lederer's self-incriminating statement, that the methamphetamine belonged to her, was unlawful possession of a controlled substance under RCW 69.50.4013.[4] Leiter found the methamphetamine in Kirby's pocket. Lederer argues that the State did not present sufficient evidence of corpus delicti because it did not identify independent evidence that *she* committed the crime of possession of a controlled substance.

---

[4] "It is unlawful for any person to possess a controlled substance." RCW 69.50.4013.

However, proof of the identity of the person who committed the crime is not generally essential to satisfy the corpus delicti rule. *State v. Solomon*, 73 Wn. App. 724, 728, 870 P.2d 1019 (1994). While some crimes require proof of identity to satisfy corpus delicti because they cannot be proved without identifying a particular person, like attempt, conspiracy, or perjury, the crime of unlawful possession of a controlled substance is *not* a crime that requires proof of identity of a particular person. *Solomon*, 73 Wn. App. at 728. "Rather, in a possession case, it is clear that a crime occurred if drugs are in the possession of someone; identity is not essential to establish the fact that a crime occurred." *Solomon*, 73 Wn. App. at 728. The State need not present independent proof that the defendant, in particular, possessed the controlled substance. *See Solomon*, 73 Wn. App. at 729.

Lederer distinguishes *Solomon* because there the police found cocaine on a dresser where "it stood to reason that *someone* had constructive possession over them" whereas here Leiter found the methamphetamine in Kirby's *actual* possession. Br. of Appellant at 29-30. She argues that Kirby's actual possession prevents the inference that a different crime had occurred, her *constructive* possession. Br. of Appellant at 30. But Lederer cites no authority for the proposition that constructive possession of a controlled substance and actual possession of a controlled substance are different crimes and RCW 69.50.4013 makes no such distinction. The State may prove unlawful possession of a controlled substance through either actual or constructive possession. *State v. Hathaway*, 161 Wn. App. 634, 645-46, 251 P.3d 253 (2011).

Thus, the State presented sufficient independent evidence, specifically Leiter's discovery of methamphetamine, that the crime of unlawful possession of a controlled substance had occurred. Therefore, the trial court did not err in ruling that the State had satisfied the corpus delicti rule.

9

CONCLUSION

We hold that Lederer's post-*Miranda* warning statements were admissible and that the trial court did not violate the corpus delicti rule.  Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

MELNICK, J.