IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81586-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER JOHN KRUG, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Christopher J. Krug appeals his convictions for possession of a controlled substance and possession of drug paraphernalia. He alleges the trial court erred by failing to timely enter its written findings of fact and conclusions of law after a CrR 3.5 hearing, that the trial court erred in admitting his post-Miranda[1] statements, and that his conviction for possession of a controlled substance should be reversed under State v. Blake.[2] Because we find no prejudice resulted from the delayed entry of written findings, his challenged statements were properly admitted under Miranda, and his conviction for possession of a controlled substance has already been properly vacated under Blake,[3] we affirm.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] 197 Wn.2d 170, 481 P.3d 521 (2021).
[3] While this appeal was pending, the parties supplemented the record with the Snohomish County Superior Court order vacating Krug's conviction for possession of a controlled substance.

FACTS

After three separate trials on the same allegations, Christopher Krug was convicted of unlawful possession of a controlled substance (heroin), then a class C felony, and possession of drug paraphernalia, a misdemeanor. The first trial ended in a mistrial after the State violated two separate court rulings on motions in limine. In the second trial, a jury convicted Krug of possession of drug paraphernalia, but hung on the possession of a controlled substance charge. At the third trial, a jury convicted Krug of possession of a controlled substance. He was sentenced for both crimes at a hearing conducted in June 2020.

Prior to trial, the court held a hearing pursuant to CrR 3.5. The State sought to admit several statements made by Krug to Snohomish County Sheriff's Deputy Michael Wilson during his arrest. Wilson had noticed Krug's vehicle at a local coffee stand and after recognizing the vehicle and Krug inside, confirmed the validity of an outstanding misdemeanor arrest warrant for Krug before contacting him. Wilson arrested Krug pursuant to the warrant, asked him to step out of the vehicle and placed him into handcuffs. Wilson asked Krug about a straw he saw in Krug's vehicle and asked if it "was a tooter."[4] Wilson searched Krug before placing him into the patrol vehicle. Only then did Wilson read Krug his Miranda rights. Krug indicated he understood his rights and made statements regarding suspected methamphetamine and heroin. Krug challenged the admissibility of the statements, arguing Wilson had engaged in a deliberate two-step interrogation procedure to circumvent Miranda. The trial court issued an oral ruling at the

---

[4] Tooter is a slang term used to describe a short straw segment, or some other similarly shaped object, used to inhale certain drugs, including smoked heroin.

conclusion of the hearing, holding the statements were admissible and that Wilson's pre-<u>Miranda</u> warning questions about the straw were not sufficient to taint the post-<u>Miranda</u> questions. At the time Krug's opening brief was filed with this court, written findings of fact and conclusions of law from the CrR 3.5 hearing had not yet been entered.

Krug timely appealed.

ANALYSIS

I.    CrR 3.5 Motion to Suppress

A.    Delayed Entry of Written Findings of Fact and Conclusions of Law

First, Krug assigns error based on the delayed entry of written findings of fact and conclusions of law after the admissibility hearing pursuant to CrR 3.5.

After a CrR 3.5 hearing, "the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." CrR 3.5(c). This is a "duty" of the court, and failure to comply with this duty is error. CrR 3.5; <u>State v. Miller</u>, 92 Wn. App. 693, 703, 964 P.2d 1196 (1998). The entry of written findings and conclusions is crucial in facilitating appellate review and protecting the defendant's constitutional rights. Error is harmless, however, when "the court's oral findings are sufficient to allow appellate review." <u>Miller</u>, 92 Wn. App. at 703.

On July 20, 2021, the court entered written findings and conclusions, which reflected its earlier oral ruling. The written findings were filed with this court on August 3, 2021, and Krug was able to challenge them in his reply brief.

We hold the trial court erred in neglecting its duty to enter findings after conducting its hearing, but because Krug fails to sufficiently demonstrate prejudice from this error, he is not entitled to remand or dismissal on this basis.

        B.        Two-Step Interrogation Procedure

Krug next assigns error to the trial court's determination that his statements made post-Miranda should have been suppressed because they were the product of an impermissible two-step interrogation procedure designed to circumvent constitutional requirements.

"When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). However, "[w]e review conclusions of law from an order pertaining to the suppression of evidence de novo." Id. We also review "a trial court's determination that police did not obtain a confession in violation of Miranda" de novo. State v. Johnson, 94 Wn. App. 882, 897, 974 P.2d 855 (1999).

The Fifth Amendment to the United States Constitution grants individuals the right to be free from self-incrimination. State v. Rhoden, 189 Wn. App. 193, 199, 356 P.3d 242 (2015). To protect this right while in police custody, "Miranda warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Before questioning an individual in custody, police must advise the individual of their Miranda rights. State v. Hickman, 157 Wn. App. 767, 772, 238

P.3d 1240 (2010). "Interrogation" includes express questioning and any "actions on the part of the police that the police . . . should know are reasonably likely to elicit an incriminating response from the suspect." State v. Sargent, 111 Wn.2d 641, 650, 762 P.2d 1127 (1988) (alterations in original) (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)).

If, after a suspect is properly advised of their rights, they knowingly, voluntarily, and intelligently waive those rights, a confession is admissible. Hickman, 157 Wn. App. at 772. However, even a confession made after Miranda warnings must be suppressed if the post-warning statements were "obtained during a deliberate two-step interrogation where the Miranda warning—in light of the objective facts and circumstances—did not effectively apprise the suspect of his rights." Id. at 774 (quoting United States v. Williams, 435 F.3d 1148, 1157–58 (9th Cir. 2006)). Courts look to objective evidence and "any available subjective evidence," to determine if a "two-step interrogation procedure was used to undermine the Miranda warning." Id. at 775 (alterations in original) (quoting Williams, 435 F.3d at 1158–59). Examples of this evidence includes "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." Id.

Krug cites Miranda to support the contention that a pre-Miranda exculpatory statement is sufficient to trigger a two-step inquiry. While Krug is correct that Miranda makes "no distinction" between inculpatory and exculpatory statements in its admissibility analysis, the question of whether a statement is

admissible under Miranda is distinct from that required for a two-step interrogation inquiry. There is a line drawn by our case law distinguishing the test for the admissibility of a statement where no Miranda warnings are given, inculpatory or exculpatory, from the inquiry as to whether a statement given pre-Miranda warnings is sufficient to taint a statement made post-Miranda warnings.

In Bobby v. Dixon, the United States Supreme Court found there was no two-step interrogation technique used where the suspect made only exculpatory statements before being given Miranda warnings. 565 U.S. 23, 31, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011). The Court distinguished Bobby from its earlier decision in Missouri v. Seibert, noting that "[i]n Seibert, the suspect's first, unwarned interrogation left 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.'" Id. (quoting 542 U.S. 600, 616–17, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004)).

Courts in our state have reached similar conclusions in published and unpublished decisions. In State v. Rhoden, Division Two of this court analyzed whether Miranda warnings were effective where a suspect "had just provided the same incriminating information" in a subsequent interrogation. 189 Wn. App. at 200. In Hickman, Division Two found a Miranda violation where the officer elicited incriminating statements "amount[ing] to a confession." 157 Wn. App. at 775–76. Similarly, in a recent unpublished opinion where a suspect had not made a pre-warning incriminating statement, Division One determined that no two-step interrogation procedure occurred. State v. Harris, No. 80372-7-I, slip

op. at 11–12, (Wash. Ct. App. Oct. 5, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/803727/pdf.[5]   Because Krug did not make any incriminating statements before the Miranda warning, the trial court did not err in finding that Wilson did not engage in a deliberate two-step interrogation procedure in order to circumvent Miranda.

In his reply brief, Krug challenges certain conclusions of law in the late-filed findings of fact and conclusions of law from the CrR 3.5 hearing.  Having considered those conclusions of law in light of the record before us, it is clear that they properly flow from the unchallenged findings of fact.[6]   Further, as set out above, our de novo review demonstrates that trial court did not err in its ultimate conclusion that no two-step interrogation procedure was used.

However, the reasoning offered by the State for Wilson's questioning of Krug prior to advising him of his Miranda rights calls for some consideration. Wilson testified that it is his general practice to delay giving Miranda warnings until a suspect is secured in his patrol vehicle because he has to put on glasses and hold the card.  Wilson admitted that he had "various discussions" with Krug prior to giving him Miranda warnings, but that it was not an interview; it was simply "small talk."  Any desire by law enforcement to engage in "small talk" with

---

[5] Unpublished opinions are not binding upon this court, but may be accorded persuasive value. GR 14.1(a).

[6] The court held in one conclusion of law that the pre-Miranda questioning as to the suspected tooter did not taint the future questioning by Wilson regarding the suspected methamphetamine and heroin, but we would note that a direct question as to whether an item is the precise sort of drug paraphernalia used to ingest the very controlled substances that were the subject of later post-Miranda questioning could, in fact, result in a finding of improper two-step interrogation by law enforcement. The pre-Miranda question about the tooter resulted in an exculpatory statement here, but is the very sort of question that is likely to elicit an incriminating response that goes to the heart of Miranda analysis.

a suspect must be curtailed until after proper <u>Miranda</u> warnings have been given. While Wilson's practice of waiting until a suspect is in the vehicle to give <u>Miranda</u> warnings is not problematic in itself, it is concerning in light of constitutional considerations that Wilson chose to ask Krug questions likely to elicit an incriminating response prior to giving him proper <u>Miranda</u> warnings. If Wilson has decided it is best for him, due to safety concerns, to wait to give <u>Miranda</u> warnings until the suspect is in his patrol vehicle, he may similarly wait to ask questions about whether an item is drug paraphernalia.

Because the trial court did not err in admitting Krug's post-<u>Miranda</u> warning statements, and because Krug was not prejudiced by the delayed entry of the written findings, we affirm his conviction for the misdemeanor offense of possession of drug paraphernalia.

WE CONCUR:

Andrus, A.C.J.

Dwyer, J.