IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>STEVEN LEE WALTHALL,<br><br>                    Appellant. | No.  86850-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Steven Walthall appeals his conviction on two counts of identity theft in the second degree. Walthall argues that the charging document was constitutionally insufficient, statements he made to police prior to receiving Miranda[1] warnings should have been suppressed, he received ineffective assistance of counsel, and prosecutorial misconduct denied him a fair trial. He also contends that the trial court erred in imposing a victim penalty assessment (VPA) after finding him indigent. The State properly concedes that remand is required to vacate and dismiss count II and to strike the VPA. We accept the State's concession and remand for the trial court to vacate and dismiss count II and to strike the VPA. We otherwise affirm.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS

On May 2, 2023, officer Kyle Stockdale and sergeant Chad Withrow of the Centralia Police Department were dispatched to a Goodwill store in response to a reported theft in progress. The dispatch report indicated that a male and female inside the Goodwill were putting items in bags. When Stockdale arrived, employees pointed out two individuals in the store and explained what they had observed. The store manager asked Stockdale to trespass the two individuals from Goodwill after they paid for their items.

Walthall carried a backpack and some other items up to the checkout counter. Withrow asked Walthall about the backpack. Walthall responded that it was Goodwill's property and that he had "just found it" on his way to the checkout counter. Walthall also denied putting anything in the bag. Withrow looked inside the backpack and found that it was "stuffed full" of Goodwill property.

Withrow escorted Walthall outside and instructed him to sit on the curb. When Withrow asked Walthall for his name, Walthall identified himself as "Daniel R. Lester." Walthall paused when providing his date of birth. Withrow told Walthall he did not believe Walthall had correctly identified himself and warned that he could be arrested for that. Withrow viewed Daniel Lester's online Department of Licensing (DOL) identification, which clearly showed that Walthall was not Daniel Lester. Withrow confronted Walthall about the disparity, but Walthall continued to insist that his name was Daniel Lester.

Withrow then advised Walthall that he was being placed under arrest. Walthall then stated that his name was "Timothy Walthall" and provided a date of birth. The officers searched Walthall and found a credit card bearing the name Steven Walthall.

The State charged Walthall with identity theft in the second degree of Daniel Lester (count I) and Timothy Walthall (count II). Prior to trial, defense counsel moved to suppress Walthall's statements to police based on the theory that their interaction with Walthall was an unlawful Terry[2] stop. The trial court denied the motion. Defense counsel declined to move to suppress Walthall's statements as involuntary because he did not think the statements were given in circumstances that amounted to custodial interrogation.

The State then sought a pretrial ruling that the Goodwill employee's request to have Walthall trespassed was not hearsay, and therefore law enforcement could testify as to what the employee said. The court agreed that such testimony is a "request or a command" that does not "fall[] within the realm of hearsay." But the court specified that the State could not introduce "anything beyond that, though, at this point." The court also granted defense counsel's motion to preclude the police officers from giving their personal opinion as to whether Walthall was stealing merchandise from Goodwill.

Both officers testified for the State at trial. Walthall did not testify. The jury convicted Walthall as charged. The court imposed a high-end standard range sentence of 57 months. Although the court found Walthall indigent, it imposed a $500 victim penalty assessment (VPA).

Walthall appealed.

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

3

DISCUSSION

Charging Document

Walthall argues that the information was constitutionally ineffective because it failed to adequately apprise Walthall of the charges against him. We disagree.

We review a challenge to the sufficiency of a charging document de novo. State v. Goss, 186 Wn.2d 372, 376, 378 P.3d 154 (2016). A charging document challenged for the first time on appeal, as here, is "liberally construed in favor of validity." State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). To provide sufficient notice, a charging document must allege "[a]ll essential elements of a crime, statutory or otherwise." Id. at 97; U.S. Const. amend. VI; Wash. Const. art. I, § 22 (amend.10). "The information is constitutionally adequate only if it sets forth all essential elements of the crime, statutory or otherwise, and the particular facts supporting them." State v. Hugdahl, 195 Wn.2d 319, 324, 458 P.3d 760 (2020). "'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'" State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The primary goal of this rule is to advise defendants of the nature of the accusations against them so they can prepare an adequate defense. State v. Tandecki, 153 Wn.2d 842, 846, 109 P.3d 398 (2005). "[T]he remedy for an insufficient charging document is reversal and dismissal without prejudice to the State's ability to refile charges." State v. Vangerpen, 125 Wn.2d 782, 792-93, 888 P.2d 1177 (1995).

A person commits identity theft if he or she "knowingly obtain[s], possess[es], use[s], or transfer[s] a means of identification or financial information of another person

... with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). Second degree identity theft is identity theft committed under circumstances not amounting to first degree identity theft. RCW 9.35.020(3).

Count I of the second amended information alleged as follows:

On or about the 1st day of May, in the County of Lewis, State of Washington, the above-named defendant did knowingly obtain, possess, use or transfer a means of identification or financial information, of another person, living or dead, to-wit: Daniel Ray Lester, knowing that the means of identification or financial information belonged to another person, with the intent to commit, or to aid or abet, any crime and obtained an aggregate total of credit, money, goods, services or anything else of value that was less than $1500 or obtained no credit, money, goods, services or anything of value; Contrary to RCW 9.35.020(1), (3).

Count II is identical to count I, with the exception of naming Timothy Aaron Walthall as the person whose identity was used.

Walthall argues that the information was insufficient because it merely recited the statutory language without accusing him of any specific act or specifying what crime he was accused of intending to commit. This court rejected a similar argument in State v. Federov, 181 Wn. App. 187, 196-99, 324 P.3d 784 (2014). In Federov, the State charged Federov with identity theft in the second degree by using the identity of another person to mislead a public servant. Id. at 190. Consistent with the identity theft statute, the to-convict instruction "direct[ed] the jury to consider whether Fedorov used another person's identity 'with the intent to commit or aid or abet any crime.'" Id. at 196. Federov argued that the crime he intended to commit was an essential element that must appear in the to-convict instruction. Id.

The Federov court compared the identity theft statute with the crime of burglary, which was addressed in State v. Bergeron, 105 Wn.2d 1, 711 P.2d 1000 (1985). There,

5

the defendant argued that "the particular crime which the defendant intended to commit inside the building or dwelling is an element of the crime of burglary, and that such crime must be specifically charged, instructed on (in a jury trial) and found as a fact (in a trial to the court)." Id. at 6. In rejecting this argument, the Bergeron court "reason[ed] that burglary in Washington is modernly a statutory offense and that our burglary statutes plainly 'require only an intent to commit any crime.'" Federov, 181 Wn. App. at 197 (quoting Bergeron, 105 Wn.2d at 15). The Federov court concluded that "Bergeron's rationale applies with equal force here."

> Like burglary (and aggravated first degree murder), identity theft is a statutory offense. The statute merely requires proof of intent to commit "any crime." RCW 9.35.020(1). Under Bergeron, the statute is plain on its face and thus does not support "reading the element of intent to commit a particular crime into the statutory offense . . . ." Bergeron, 105 Wn.2d at 15, 711 P.2d 1000.

Id. at 197-98.

Walthall argues that Federov is not dispositive because it analyzes the adequacy of a jury instruction, whereas he challenges the adequacy of the charging document. He points to a citation in Federov observing that the issues are "analytically distinct." Id. at 198. But Bergeron held that "the specific crime or crimes intended to be committed inside burglarized premises is not an element of burglary that must be included in the *information*, jury instructions or in the trial court's findings and conclusions." Bergeron, 105 Wn.2d at 16 (emphasis added). Walthall offers no persuasive basis to depart from this holding. Accordingly, we conclude that the second amended information adequately apprised Walthall of the crime he was accused of.

Walthall also argues that, even if he was reasonably apprised of the crime he was accused of, reversal is required because he was actually prejudiced by the

6

inartfully-worded information. He contends that neither he nor his counsel understood that he was accused of identity theft on the basis of making a false or misleading statement to a public servant. The record does not support this assertion, and we reject it.

<u>Custodial Interrogation</u>

For the first time on appeal, Walthall argues that police officers failed to advise him of his constitutional rights before interrogating him in a custodial setting. He contends that the resulting statements identifying himself as Timothy Walthall were involuntary and should have been suppressed. The State agrees and concedes error as to count II. The concession is well-taken.

Generally, we do not consider a claim of error raised for the first time on appeal. RAP 2.5(a); <u>State v. O'Hara</u>, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). An exception exists where the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); <u>O'Hara</u>,167 Wn.2d at 98. "Manifest" error requires a showing of actual prejudice. <u>State v. Kirkman</u>, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" <u>Kirkman</u>, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting <u>State v. WWJ Corp.</u>, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). Here, the error is of constitutional magnitude because Walthall asserts a violation of his Fifth Amendment right against self-incrimination. And the error is manifest because the record shows Walthall's pre-<u>Miranda</u> custodial statements identifying himself as Timothy Walthall should have been suppressed.

"The Fifth Amendment right against compelled self-incrimination requires police to inform a suspect of his or her Miranda rights before a custodial interrogation." State v. Cunningham, 116 Wn. App. 219, 227, 65 P.3d 325 (2003). The purpose of these warnings is to "protect a defendant from making incriminating statements to police while in the coercive environment of police custody." State v. Hickman, 157 Wn. App. 767, 772, 238 P.3d 1240 (2010). A suspect is deemed in custody for Miranda purposes when "a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest." State v. Heritage, 152 Wn.2d 210, 218, 95 P.3d 345 (2004). Courts consider the totality of the circumstances including the "nature of the surroundings, the extent of police control over the surroundings, the degree of physical restraint placed on the suspect, and the duration and character of the questioning." State v. Escalante, 195 Wn.2d 526, 534, 461 P.3d 1183 (2020). "An interrogation occurs when the investigating officer should have known his or her questioning would provoke an incriminating response." Cunningham, 116 Wn. App. at 228. Without Miranda warnings, a suspect's custodial statements are presumed involuntary. State v. Rhoden, 189 Wn. App. 193, 199, 356 P.3d 242 (2015). In contrast, "a confession is voluntary, and therefore admissible, if made after the defendant has been advised concerning rights and the defendant then knowingly, voluntarily and intelligently waives those rights." Hickman, 157 Wn. App. at 772 (quoting State v. Aten, 130 Wn.2d 640, 663, 927 P.2d 210 (1996)).

The parties agree that Walthall was in custody for Miranda purposes when, upon questioning by law enforcement officers, he made statements identifying himself as Timothy Walthall. The parties also agree that Walthall was not provided Miranda

8

warnings prior to making these incriminating statements, which were admitted as evidence at trial. The State thus concedes that Walthall's statements identifying himself as Timothy Walthall would have been suppressed if there had been a CrR 3.5 hearing. The State also concedes that the result of that suppression would have been the State's inability to prove count II, identity theft in the second degree naming Timothy Walthall. We accept the State's concession and agree that count II must be vacated and dismissed.

But the State contends, and we agree, that the error was harmless as to count I, identity theft of Daniel Lester. "Constitutional error is presumed prejudicial and the State bears the burden of showing the error was harmless beyond a reasonable doubt." State v. Chambers, 197 Wn. App. 96, 128, 387 P.3d 1108 (2016). Walthall argues that count I must also be vacated and dismissed because the State argued that Walthall knew Daniel Lester was a real person on the basis that Timothy Walthall and Daniel Lester lived at the same address. See State v. Berry, 129 Wn. App. 59, 67, 117 P.3d 1162 (2005) (To commit identity theft, the victim must be a "specific, real person."). However, independent admissible evidence shows that Walthall identified himself to police as "Daniel R. Lester" and that he provided an accurate date of birth for that individual. The State also introduced Lester's DOL identification to demonstrate that Lester was a real person. The State then relied on this evidence to argue that Walthall's ability to provide Daniel Lester's full name and accurate date of birth showed that Walthall knew Lester was a real person. This independent admissible evidence was sufficient to prove beyond a reasonable doubt that Walthall committed identity theft in the second degree as to Daniel Lester, as charged in count I.

9

<u>Ineffective Assistance of Counsel</u>

Walthall contends that reversal is required because he received ineffective assistance of counsel. We disagree.

A criminal defendant is entitled to effective legal counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; <u>State v. Grier</u>, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance of counsel claims de novo. <u>State v. Rafay</u>, 168 Wn. App. 734, 775, 285 P.3d 83 (2012).

To prevail on an ineffective assistance of counsel claim, a defendant must establish two elements: deficient performance and resulting prejudice. <u>State v. Kyllo</u>, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Deficient performance is shown where an attorney's conduct falls "below an objective standard of reasonableness based on consideration of all the circumstances." <u>State v. Estes</u>, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (citing <u>State v. McFarland</u>, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). To show prejudice, the defendant must prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. <u>Id.</u> (citing <u>Kyllo</u>, 166 Wn.2d at 862). Where a defendant fails to prove either element, "we need not inquire further." <u>State v. Hassan</u>, 151 Wn. App. 209, 217, 211 P.3d 441 (2009).

Walthall argues that counsel was constitutionally ineffective for failing to request a bill of particulars or to otherwise sufficiently research identity theft and its possible predicate crimes in order to advise Walthall of the evidence against him. This is so, he contends, because defense counsel did not know what intended crime the State

planned to rely on in prosecuting him for identity theft, nor did counsel research the law to ascertain what crimes the prosecution might attempt to rely on. However, as discussed above, it was sufficient for the information to allege that Walthall committed identity theft with the intent to commit "any crime," not a specific crime. And nothing in the record supports Walthall's assertion that defense counsel was not aware of the facts that supported the crime Walthall was alleged to have committed.

In fact, when the State attempted to include a jury instruction defining the crime of making a false or misleading statement to a public servant, defense counsel successfully persuaded the court to reject the instruction because it would be confusing for the jury because the State was not asking the jury to determine if Walthall actually committed the crime of making a false or misleading statement to a public servant. During the discussion, the State made clear that the reason it wanted to include the instruction is to support that the "any crime" Walthall intended to commit was making a false or misleading statement to a public servant. At no time did defense express surprise or confusion that such an act could qualify as "any crime" for the crime of identity theft in the second degree. Defense counsel was not ineffective for failing to request a bill of particulars.

Walthall also argues that defense counsel was ineffective for failing to move to suppress his pre-Miranda statements identifying himself as Timothy Walthall. Because we accept the State's concession that count II must be vacated and dismissed, we need not reach this issue.

11

Prosecutorial Misconduct

Walthall argues that the prosecutor repeatedly engaged in misconduct by violating the court's pretrial ruling limiting testimony regarding statements made by Goodwill employees to the request to trespass Walthall. To the extent that misconduct occurred, Walthall has not established a basis for reversal.

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper. Emery, 174 Wn.2d at 759. We review the prosecutor's conduct and whether prejudice resulted from it "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. If the conduct was improper, we then look to whether the prosecutor's improper conduct resulted in prejudice to the defendant. Emery, 174 Wn.2d at 760. To establish prejudice, a defendant must show there is a "substantial likelihood" the prosecutor's misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011). Where a defendant fails to object to a prosecutor's improper statement, the defendant waives the error unless the statement is so "flagrant and ill intentioned" that the prejudice could not have been remedied by an instruction to the jury. Id. at 443. Under this heightened standard, the defendant must show that "(1) 'no curative

instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

First, in his opening statement, the prosecutor asserted that Walthall "was taking some items and he had a bag with him. And the bag is significant because it was believed that he was about to steal some of the items in the bag." The State asserts that this statement did not violate the pretrial rulings because the prosecutor did not opine that Walthall actually stole anything. We disagree. The statement clearly referenced the Goodwill employees' observations regarding Walthall's behavior in the store, in violation of the court's pretrial ruling limiting such testimony to the employee's request to trespass Walthall. But defense counsel did not object to this statement. If he had, the court could have stricken the comment and instructed the jury to disregard it. This statement was not so flagrant and ill intentioned that it resulted in incurable prejudice.

Next, during the State's case-in-chief, the prosecutor asked Withrow whether "anyone employed by Goodwill ma[de] any requests to you about anyone?" Defense counsel objected on the basis of hearsay, and in response, the prosecutor specified that he was asking "[w]hat the employees had requested." The court allowed the testimony to proceed. Withrow then testified that, "per our CAD notes, [the employees] had mentioned there was a male and female suspect and that they were stuffing bags full of merchandise inside the store" and that "the Goodwill employee wanted them trespassed after they paid for their items." Defense counsel did not object to this response. Although Withrow's reference to "stuffing bags full of merchandise" plainly violated the court's pretrial ruling, the prosecutor's questioning did not disregard the ruling. To the

13

contrary, it appears that the prosecutor properly sought to elicit testimony regarding any "requests" Goodwill employees made, consistent with the pretrial ruling allowing testimony regarding the trespass request. Moreover, defense counsel failed to preserve any error by renewing his hearsay objection in response to Withrow's improper response.

The following exchange also occurred during the prosecutor's direct examination of Withrow:

> PROSECUTOR: Okay. So when you approached the defendant, what was that initial interaction like?
>
> WITNESS: I'd observed him carry a bag up to the front counter. It was a backpack. And he also had a couple other items he had carried up to the front. I approached him and asked him about the bag, the backpack that he had.
>
> PROSECUTOR: What was his response?
>
> WITNESS: He said it was Goodwill's property, he just found it on the way up to the checkout. However, it was the same bag that we were advised that Officer Stockdale advised me upon arrival that he was seen by the employee stuffing it full of merchandise.
>
> PROSECUTOR. Okay. And so after that, what happened next?
>
> WITNESS: I asked him further questions about the bag, like what was inside the bag. He said that he did not know because he didn't put anything in the bag. He denied doing that, even though he was seen by the employees.

At that point, defense counsel objected to Withrow's testimony as hearsay. The prosecutor asked "[a]s to which part?" and defense counsel responded, "[w]hat the Goodwill employees told them that they did not witness." The court sustained the objection and granted Walthall's motion to "strike any comment related to what the Goodwill employees had said to the officers." The court also instructed the jury to

14

"disregard anything that the officer said just in the testimony just now as to what employees had told him." As in the previous exchange, it does not appear that the prosecutor sought to elicit the improper testimony. And in any case, the testimony was properly stricken.

Lastly, during closing, the prosecutor told the jury that Stockdale "told you that when he arrived [at Goodwill] … he had learned that the suspects had been stuffing numerous items into a store bag." The State asserts that the prosecutor's statement did not violate the pretrial ruling because he was merely explaining why the officer spoke to the employees and initiated the trespass procedure. The State further contends that the statement was proper because it did not appeal to the jury's passion or prejudice and did not contain facts not in evidence. We disagree. The prosecutor's statement plainly exceeded the permissible scope of testimony regarding what the Goodwill employees told Withrow. And, as Walthall points out, the trial court had previously sustained defense counsel's objection to similar testimony from Withrow. But defense counsel did not object or request a curative instruction this time. The statement, though improper, was not so flagrant and ill-intentioned that any prejudice would be incurable by a jury instruction.

Walthall likens his case to State v. Fisher, 165 Wn.2d 727, 202 P.3d 937 (2009), but that case does not compel a different outcome. In Fisher, a prosecution for child molestation, the trial court allowed the State over the defendant's objection to introduce evidence of Fisher's physical abuse of his stepchildren for the limited purpose of explaining the victim's delay in reporting the abuse. Id. at 745-46. But instead of using the evidence for its purported purpose—and despite Fisher's standing objection—the

15

prosecutor repeatedly violated the pretrial ruling "by impermissibly using the physical abuse evidence to demonstrate Fisher's propensity to commit the crimes." Id. at 748-49. Because the jury was "left with the wrong impression that it must convict Fisher to obtain justice for the harm caused" to the other children, the Fisher court held that there was a substantial likelihood that the prosecuting attorney's misconduct affected the jury, thus meriting a new trial. Id. at 749. Here, in contrast, any violation of the trial court's pretrial ruling did not result in incurable prejudice.

Walthall also suggests that he should be treated as having a "standing objection" to any violation of the pretrial ruling regarding what the Goodwill employees said. When an evidentiary ruling is pursuant to a motion in limine, the losing party is deemed to have a standing objection and need not specifically object at trial to preserve the issue for appeal. State v. Finch, 137 Wn.2d 792, 819-20, 975 P.2d 967 (1999). But neither party sought to introduce testimony as to what the Goodwill employees saw Walthall doing in the store. Rather, the trial court granted the State's motion to allow testimony as to the trespass request, but nothing more. Walthall was not the losing party, so he did not have a standing objection. And even if he did, Walthall has not demonstrated a substantial likelihood that the prosecutor's comments affected the jury's verdict in light of the admissible evidence of Walthall's guilt as to count I. Walthall has not shown that prosecutorial misconduct requires reversal.

## VPA

Walthall argues, and the State concedes, that the $500 VPA should be stricken because of his indigency. We agree.

16

Effective July 1, 2023, the trial court may not impose the VPA on a defendant who is found indigent at the time of sentencing. RCW 7.68.035(4). Walthall was sentenced on July 5, 2023, days after the new law came into effect. Here, the trial court found Walthall indigent. Therefore, we remand for the trial court to strike the VPA.

## CONCLUSION

We remand to the trial court with instructions to vacate Count II and to strike the VPA from Walthall's judgment and sentence. We otherwise affirm.

_Coburn, J._

WE CONCUR:

_Chung, J._

_Hazelrigg, ACJ_